IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

CORNERSTONE HOSPITAL OF            )
SOUTHEAST ARIZONA, L.L.C., a        )
Delaware limited liability company,   )
                                     )
                     Petitioner,     )          2 CA-SA 2012-0067
                                     )          DEPARTMENT B
          v.                         )
                                     )          O P I N I O N
HON. JAMES E. MARNER, Judge of the   )
Superior Court of the State of Arizona, in )
and for the County of Pima,          )
                                     )
                     Respondent,     )
                                     )
          and                        )
                                     )
ERNEST H. BLACKBURN,                 )
Personal Representative of the Estate of )
BILLIE JO BLACKBURN, on behalf of the )
ESTATE OF BILLIE JO BLACKBURN,       )
                                     )
                Real Party in Interest. )
_____ )

SPECIAL ACTION PROCEEDING

Pima County Cause No. C20101401

JURISDICTION ACCEPTED; RELIEF DENIED

_____

Campbell, Yost, Clare & Norell, P.C.
  By Margaret F. Dean                                            Phoenix
                                              Attorneys for Petitioner

Law Office of Scott E. Boehm, P.C.
  By Scott E. Boehm                                               Phoenix

    and

Wilkes & McHugh, P.A.
  By Melanie L. Bossie                                            Phoenix
                                        Attorneys for Real Party in Interest

---

V Á S Q U E Z, Presiding Judge.

¶1        In this special action, we are asked to decide whether A.R.S. § 12-2604, which prescribes the qualifications of a standard-of-care expert in an action involving allegations of medical negligence, applies to an action brought pursuant to the Adult Protective Services Act (APSA), A.R.S. §§ 46-451 through 46-459. We conclude § 12-2604 does apply to an APSA action that is based on allegations of medical negligence involving a vulnerable adult, and that the respondent judge erred by concluding otherwise. But, because the respondent reached the correct result in any event, finding the plaintiff/real party in interest's expert qualified to provide nursing standard-of-care testimony, we deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In July 2010, real party in interest Ernest Blackburn, personal representative of the estate of his deceased wife, Billie Jo Blackburn,[1] filed a complaint pursuant to

---

[1] Although Billie Jo died about eight months after she was discharged from petitioner Cornerstone Hospital of Southeast Arizona, L.L.C., Blackburn concedes her death was unrelated to abuse and neglect she allegedly suffered while at Cornerstone.

2

APSA against multiple defendants, including petitioner Cornerstone Hospital of Southeast Arizona, L.L.C. (Cornerstone), a specialty hospital licensed as a long-term acute care (LTAC) facility.[2] Blackburn alleged that after a period of treatment at a Tucson hospital in early 2008, Billie Jo, a vulnerable adult as defined by APSA, *see* § 46-451(A)(9), was transferred to Cornerstone where she received further treatment, care, and rehabilitation between April 17 and July 2, 2008, that fell below the applicable standard of care. Blackburn alleged Billie Jo was "deprived of proper nursing and medical services," which resulted in "the following injuries and harm: a) the development and worsening of pressure sores, including but not limited to a horrific pressure sore to her coccyx; b) infections; and c) dehydration and malnourishment." Blackburn asserted the acts or omissions of the various health care professionals involved in Billie Jo's care "constitute a breach of [their] duties and are a deviation from the applicable standard of care in reckless disregard of" her needs, "constituting abuse and neglect of a vulnerable adult as defined by statute, giving rise to a cause of action" under APSA.

¶3　　　　In February 2010, Blackburn filed the certification required by A.R.S. § 12-2603, asserting, "Although it does not appear that nursing homes are health care professionals, . . . expert opinion testimony may be necessary to prove standard of care or liability for the claims in this case." In further compliance with that statute, Blackburn filed the affidavit of his designated expert, Joyce Black, and attached her curriculum vitae.

---

[2]Claims against some of the other defendants were resolved by settlement. Two defendants were dismissed by stipulation, and summary judgment was granted as to two others. Cornerstone is the remaining defendant.

Black avowed she is a registered nurse in the State of Nebraska and has an associate's degree in nursing, a bachelor of science degree in nursing, a masters degree in medical-surgical nursing, a doctoral degree or Ph.D. in nursing, and extensive clinical, research, and teaching experience in the area of wound care, particularly pressure ulcers. Black avowed she had defended her Ph.D. dissertation on the subject of the healing rates of diabetic and non-diabetic patients with pressure ulcers. She also stated that, based on her "training, education and experience," she was able to "determine whether or not appropriate standards of care were met, and whether nursing home residents' rights were deprived, violated, or infringed upon." And, she avowed, she had reviewed the records regarding Billie Jo's stay at Cornerstone and concluded, "the acts, errors and omissions of staff . . . violated minimum standards of care and constituted a conscious indifference to Billie Jo Blackburn's rights as a resident and a patient throughout her residency." Black then specified the various acts and omissions as they related to Billie Jo's injuries and medical condition.

¶4 In May 2012, Blackburn filed his third supplemental disclosure of expert witnesses and opinions in which he listed Black as his only standard-of-care witness. He reviewed Black's educational and professional background, identified the documents she had reviewed in connection with the case, and summarized the areas about which he expected her to testify. Black's anticipated testimony included her opinion that the defendants had violated "minimum standards of care" and the consequences of those violations with respect to the injuries and harm Billie Jo had sustained. Cornerstone filed

4

a motion to preclude certain testimony by Black on the ground that she was not qualified under § 12-2604 or Rule 702, Ariz. R. Evid., to give expert "opinions about nutritionist standards of care, nursing administration standards of care (including staffing), certified nursing assistant standards of care, physician standards of care, and the definitions of abuse and neglect." Cornerstone maintained Black did not have "formal education" in wound care and that her "bedside nursing care" experience "is not specific to wound care." Cornerstone requested that the respondent judge preclude Black from "offer[ing] opinions on subjects and in areas for which she has no education, training, or experience."

¶5 After Blackburn filed a response and Cornerstone filed a reply, the respondent judge granted Cornerstone's motion with regard to hospital administration, but rejected it as to other areas about which Black was expected to testify. Although respondent found § 12-2604 does not apply to claims asserted under APSA, he nevertheless concluded Black was qualified under § 12-2604 to give her expert opinion on the subject of nursing. The respondent rejected Cornerstone's request to limit Black's testimony to wound care, pursuant to Rule 702, finding such a limitation "unduly restrictive." The respondent then evaluated Black's qualifications under Rule 702 with regard to the other areas Blackburn had identified, agreeing with Cornerstone that Black was not qualified to provide standard-of-care opinions about the conduct of nutritionists who had cared for Billie Jo, but finding she could testify about nursing staff's interactions with nutritionists. The respondent found Black qualified to testify about charge nurses but not about hospital nurse staffing issues, finding insufficient foundation for such

5

testimony under Rule 703, Ariz. R. Evid. The respondent also found Black qualified to testify about the standard of care for Certified Nursing Assistants (CNAs) because they "are, by definition, assistants to the nursing staff." Cornerstone challenges the respondent's ruling in its special action petition.

## SPECIAL ACTION JURISDICTION

**¶6** "Whether to accept special action jurisdiction is for this court to decide in the exercise of our discretion." *Potter v. Vanderpool*, 225 Ariz. 495, ¶ 6, 240 P.3d 1257, 1260 (App. 2010). Although we exercise that discretion cautiously when asked to intervene in pretrial rulings relating to the admissibility of evidence, rulings that are committed to a trial judge's "broad discretion," *Escamilla v. Cuello*, 230 Ariz. 202, ¶ 20, 282 P.3d 403, 407 (2012), there are compelling reasons that we do so here.

**¶7** First, as a pretrial evidentiary ruling, the challenged order is interlocutory in nature. *See Potter*, 225 Ariz. 495, ¶ 7, 240 P.3d at 1260 (acceptance of special action jurisdiction appropriate when challenged order interlocutory). Consequently, there is no direct review of such an order by appeal. *See* Ariz. R. P. Spec. Actions 1(a) (special action appropriate when no equally plain, speedy, or adequate remedy by appeal exists). Second, although the decision whether to admit expert testimony is committed to a trial judge's sound discretion, *Escamilla*, 230 Ariz. 202, ¶ 20, 282 P.3d at 407, here, the respondent judge was required to resolve questions of law in exercising that discretion and ruling on Cornerstone's motion. When a special action raises purely legal questions, which we review de novo, *Awsienko v. Cohen*, 227 Ariz. 256, ¶ 10, 257 P.3d 175, 177

6

(App. 2011), it is particularly appropriate for us to accept jurisdiction, *Sierra Tucson, Inc. v. Lee*, 230 Ariz. 255, ¶ 7, 282 P.3d 1275, 1277 (App. 2012).

**¶8** Most importantly, the issues presented in this case involve legal questions that are of first impression and statewide importance regarding the interpretation and application of § 12-2604; the Medical Malpractice Act (MMA), A.R.S. §§ 12-561 through 12-594; and APSA. *See Lear v. Fields*, 226 Ariz. 226, ¶ 6, 245 P.3d 911, 914 (App. 2011) (accepting special action jurisdiction because issues involved "interpretation of a newly enacted statute that affects the admissibility of expert testimony in all trials, a pure question of law"); *see also Lo v. Lee*, 230 Ariz. 457, ¶¶ 1-2, 286 P.3d 801, 802 (App. 2012) (accepting special action jurisdiction to review interlocutory denial of motion for summary judgment and motion to disqualify standard-of-care expert in medical malpractice action to address questions of law regarding qualifications required of expert under § 12-2604 for specialists).

**¶9** Although we conclude the respondent judge erred in interpreting the law, after soundly exercising his discretion, he correctly found Black qualified with respect to most of the areas about which she is expected to testify and we, therefore, deny relief. *See* Ariz. R. P. Spec. Actions 3(c) (providing abuse of discretion among bases for granting special action relief); *see also Potter*, 225 Ariz. 495, ¶¶ 6-7, 240 P.3d at 1260 (accepting special action jurisdiction and granting relief because respondent judge acted in excess of legal authority or jurisdiction); *Carondelet Health Network v. Miller*, 221 Ariz. 614, ¶¶ 2, 19, 212 P.3d 952, 954, 957 (App. 2009) (accepting special action

7

jurisdiction to address matters of statewide importance but denying relief because respondent judge did not abuse discretion).

## APPLICATION OF § 12-2604 TO APSA CLAIMS

¶10 Section 12-2604(A) provides, in relevant part, as follows: "In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state" and meets the remaining criteria specified in the statute. Although the respondent judge correctly acknowledged, based on our supreme court's decision in *Estate of McGill v. Albrecht*, 203 Ariz. 525, 57 P.3d 384 (2002), that an APSA claim may be based on allegations of medical negligence, he nevertheless concluded that regardless of the medical-negligence underpinnings of some of Blackburn's claims, § 12-2604 does not apply in this case because the complaint was brought pursuant to APSA. The respondent apparently agreed with Blackburn's contention, which Blackburn also asserts in this special action proceeding, that based on its clear terms, § 12-2604 only applies to medical malpractice claims, that is, those claims brought under the MMA. Cornerstone contends in its special action petition that the respondent erred in reaching this conclusion, and we agree.

¶11 This court's goal when interpreting a statute is to determine and give effect to the legislature's intent in enacting it. *Lo*, 230 Ariz. 457, ¶ 10, 286 P.3d at 804. "In doing so, '[w]e first look to the statute's language and if its meaning is clear, we rely on the plain language rather than utilizing other ways of interpreting the statute.'" *Id.*,

8

*quoting Baker v. Univ. Physicians Healthcare*, 228 Ariz. 587, ¶ 5, 269 P.3d 1211, 1213 (App. 2012). But if a statute's terms are ambiguous, "'we determine legislative intent by looking first to the text and context of the statute.'" *Id.*, *quoting Baker*, 228 Ariz. 587, ¶ 5, 269 P.3d at 1213; *see also Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005).

¶12 Section 12-2604 appears in chapter 17 of title 12 of the Arizona Revised Statutes. The chapter is entitled, "Claims Against Licensed Professionals"; the statute is entitled, "Expert witness qualifications; medical malpractice actions." § 12-2604. By its express terms, the statute applies to "an action alleging medical malpractice" in which expert testimony is necessary to establish the standard of care. *Id.* As Cornerstone notes, the statute does not state that it applies to actions alleging medical malpractice that are brought pursuant to the MMA. Rather, based on its clear language, it applies to any action alleging medical malpractice.

¶13 Had the legislature intended to limit the application of § 12-2604 to claims asserted pursuant to the MMA, presumably it would have done so by including such a limitation in the statute itself and expressly referring to the MMA. *Cf. Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, ¶ 9, 183 P.3d 1285, 1288 (App. 2008) (rejecting argument that "§§ 12-2603 and 12-2604 only apply to 'usual' medical malpractice cases and not those involving the doctrine of res ipsa loquitur" because "we presume that, if the legislature had intended to create such an exception, it would have done so expressly"); *see also Aileen H. Char Life Interest v. Maricopa Cnty.*, 208 Ariz. 286, ¶ 44, 93 P.3d 486,

499 (2004) (rejecting argument prevailing taxpayers entitled to only one award for multiple parties represented by same attorney because "if the legislature had intended to limit the statute . . . , it would have used language making that limitation clear").

¶14 Nevertheless, for several reasons, we agree the statute is ambiguous and the scope of its application is unclear. There is no definition of "medical malpractice action" in § 12-2604, other provisions in chapter 17 of title 12, or APSA, and such actions are the subject of the MMA, which does define "medical malpractice action," *see* A.R.S. § 12-561(2). *Cf. Baker*, 228 Ariz. 587, ¶ 7, 269 P.3d at 1214 (finding § 12-2604 ambiguous because legislature failed to define term "specialty"). We nevertheless conclude § 12-2604 applies to APSA claims that are based on allegations of medical negligence. Our conclusion is grounded on the legislative intent and purpose behind § 12-2604, other provisions in chapter 17, language in the MMA and APSA, and our supreme court's decision in *Estate of McGill*.

¶15 As we stated in *Lo*, in enacting § 12-2604, "the legislature intended . . . [to] 'ensure that physicians testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation.'" 230 Ariz. 457, ¶ 11, 286 P.3d at 804, *quoting Awsienko*, 227 Ariz. 256, ¶ 13, 257 P.3d at 178. We have no basis for concluding the legislature intended a different standard for determining the admissibility of standard-of-care evidence in medical-negligence actions brought pursuant to the MMA than for actions pursued under APSA. The goal of ensuring a person providing medical standard-of-care testimony has sufficient expertise is no less

10

compelling in an action brought on behalf of a vulnerable adult for abuse or neglect than in one under the MMA. We discern no intent by the legislature from the language of any of these statutes that only Rule 702, not § 12-2604, determines the admissibility of medical standard-of-care evidence in APSA cases. Indeed, the various interrelated statutes establish otherwise.

**¶16** In addition to the language in § 12-2604 discussed above, other portions of chapter 17 of title 12 reflect that the legislature intended § 12-2604 to govern the admission of standard-of-care evidence on the issue of medical negligence in both MMA and APSA proceedings.[3] As we noted previously, chapter 17 of title 12 pertains to actions against all licensed professionals, some of which are licensed medical professionals. Accordingly, in A.R.S. § 12-2601 the legislature defined the term "claim," acknowledging essentially two species of claims against licensed professionals: claims that the remaining portions of that subsection created, which are not medical-based, and claims "relating to health care under [§§] 12-561 through 12-563 of this title or under title 46, chapter 4," that is, claims for medical negligence brought under the MMA and APSA. § 12-2601(1). Maintaining this distinction between nonmedical-based and medical-related claims, A.R.S. § 12-2602 applies to nonmedical-related claims against a licensed professional and requires the claimant to file a certification stating whether the

---

[3]Of course, APSA claims may be based on abuse or neglect that is neither based on allegations of medical negligence nor brought against licensed professionals. *See Estate of McGill*, 203 Ariz. 525, ¶ 19, 57 P.3d at 389 (discussing various kinds of APSA claims and distinguishing those that are medical-based from others).

testimony of an expert will be required to establish the standard of care for that profession and, if so, the expert's qualifications and anticipated testimony.

¶17 Similarly, § 12-2603, with which Blackburn complied, applies to claims asserted "in a civil action" against a health care professional, that is, claims that are medical-based or medical-related. Entitled, in part, "Preliminary expert opinion testimony against health care professionals," it requires the claimant to certify whether medical standard-of-care evidence will be necessary to support the claim. § 12-2603(A). Subsection (H)(1) states that, for purposes of that statute, "'Claim' means a legal cause of action against a health care professional under [§§] 12-561 through 12-563 [MMA] or under title 46, chapter 4 [APSA]," that "is based on the health care professional's alleged breach of contract, negligence, misconduct, errors or omissions in rendering professional services," and for which "[e]xpert testimony is necessary to prove the health care professional's standard of care or liability for the claim."

¶18 Section 12-2603(B) provides that when a party certifies expert testimony is required to establish the health care professional's standard of care, the party must file a "preliminary expert opinion affidavit" containing the four enumerated requirements of that subsection. The first requirement is, "[t]he expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim." § 12-2603(B)(1). Section 12-2604, which immediately follows and is the "companion statute" to § 12-2603, *Sanchez*, 218 Ariz. 317, ¶ 6, 183 P.3d at 1288, establishes the qualifications for the medical expert whose affidavit is being submitted. Given the context in which

12

these terms and their requirements appear, and reading § 12-2603(B)(1) together with § 12-2604, as we must, *see City of Sierra Vista v. Sierra Vista Wards Sys. Voting Project*, 229 Ariz. 519, n.9, 278 P.3d 297, 303 n.9 (App. 2012), we conclude the legislature intended that in an action "alleging medical malpractice," § 12-2304(A), whether brought under the MMA or APSA, the expert's qualifications for purposes of § 12-2603(B)(1) are governed by § 12-2604. *See also Swift Transp. Co. v. Maricopa Cnty.*, 225 Ariz. 262, ¶ 11, 236 P.3d 1209, 1212 (App. 2010) (related statutes must be construed together).

¶19 Blackburn insists "there are no allegations of medical malpractice here." But when correctly characterized, Blackburn's APSA claim is based, in part, on allegations of medical negligence, which is synonymous with "an action alleging medical malpractice" in § 12-2604. As we previously noted, there is no definition of "action alleging medical malpractice" in § 12-2604 or any other statute appearing under chapter 17 of title 12. The MMA, however, defines "[m]edical malpractice action" or "cause of action for medical malpractice" as

> an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent . . . .

§ 12-561(2).

¶20 That definition does not restrict medical malpractice claims to those that may be asserted under the MMA. Rather, the MMA acknowledges that claims against

13

licensed health care providers raised under APSA are a species of medical-malpractice claims, albeit claims that must be asserted under APSA:

> A medical malpractice action brought against a physician licensed pursuant to title 32, chapter 13 or 17, a podiatrist licensed pursuant to title 32, chapter 7, a registered nurse practitioner licensed pursuant to title 32, chapter 15 or a physician assistant licensed pursuant to title 32, chapter 25 regarding services provided within that person's scope of practice shall not be based on the neglect, abuse or exploitation of a vulnerable adult, except as provided in [§] 46-455.

A.R.S. § 12-562(D).

¶21 Contrary to his argument, the allegations of Blackburn's complaint belie his assertion that he has alleged no claims of medical malpractice. He has alleged that Billie Jo received inadequate "nursing and medical services" while at Cornerstone, that these services fell below the applicable standard of care, and, as a result, she developed pressure sores and an existing pressure sore worsened, became infected, and caused her great pain. He also alleged she became dehydrated and was malnourished because of lack of adequate nursing care. Blackburn asserted that the acts or omissions of the various health care professionals involved in Billie Jo's care "constitute a breach of [their] duties and are a deviation from the applicable standard of care in reckless disregard of" her needs, "constituting abuse and neglect of a vulnerable adult as defined by statute, giving rise to a cause of action" under APSA. These are claims of medical negligence or medical malpractice because they are based on the "alleged negligence, misconduct, errors or omissions, or breach of contract" of various "licensed health care provider[s]"

14

while "rendering . . . health care, medical services, nursing services or other health-related services" on behalf of Billie Jo. § 12-561(2). That they involve a vulnerable adult and may be brought under APSA does not change their nature.

¶22 APSA is "a statutory scheme" designed to "protect[] vulnerable adults [from abuse or neglect] by imposing criminal penalties on and providing for civil enforcement against those who violate its terms." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, ¶ 6, 266 P.3d 349, 351 (2011). The legislature created a statutory civil cause of action with § 46-455(B), *Denton*, 190 Ariz. at 155, 945 P.2d at 1286, which states, in part, as follows:

> A vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct.

¶23 But APSA also contemplates claims based on medical negligence. Mirroring § 12-562(D), remaining portions of § 46-455(B) limit the circumstances in which "[a] physician licensed pursuant to title 32, chapter 13 or 17, a podiatrist licensed pursuant to title 32, chapter 7, a registered nurse practitioner licensed pursuant to title 32, chapter 15 or a physician assistant licensed pursuant to title 32, chapter 25, while providing services within the scope of that person's licensure" may be "subject to civil liability for damages" under APSA to situations essentially involving the care of a vulnerable adult.

15

¶24 Blackburn maintains, however, that the claims relating to the injuries and other harm Billie Jo sustained could only be brought under APSA because the APSA claims survived Billie Jo's death, *see* § 46-455(P), whereas claims brought pursuant to the MMA do not. *See* A.R.S. § 12-612(A). But, Blackburn has established no connection between the survival of APSA claims and the application of § 12-2604 to such claims, and we are aware of none. And as we previously noted, various provisions within chapter 17 of title 12 lead us to conclude the legislature did not intend to so narrowly construe actions "alleging medical malpractice" and nothing in APSA or the MMA persuades us otherwise. Indeed, as our supreme court held in *Estate of McGill*, APSA and MMA claims are not mutually exclusive—acts of medical negligence can form the basis of a claim under APSA. 203 Ariz. 525, ¶ 22, 57 P.3d at 390.

¶25 In *Estate of McGill*, the court examined "the interplay between APSA and the [MMA]" and addressed the question whether an APSA action under § 46-455(B) may be based on medical negligence, including a single act of negligence as opposed to a pattern of negligent, abusive conduct. 203 Ariz. 525, ¶¶ 1, 22, 57 P.3d at 385, 390. Noting the observation it had made in *Denton v. Superior Court*, 190 Ariz. 152, 156, 945 P.2d 1283, 1287 (1997), that the legislative purpose behind APSA was protection of Arizona's elderly population from abuse, the court found it "clear from the text of the statute, the conditions prevalent in this state, and the sparse legislative history that the statute was intended to increase the remedies available to and for elderly people who had been harmed by their caregivers." *Estate of McGill*, 203 Ariz. 525, ¶ 6, 57 P.3d at 387.

16

¶26 With these principles in mind, the court considered whether abuse or neglect as defined by the statute, *see* A.R.S. § 46-451(A)(1), (A)(6), could include even a single act of medical negligence or whether the MMA provides the exclusive remedy for such negligence. *Estate of McGill*, 203 Ariz. 525, ¶ 8, 57 P.3d at 387. The court held:

> [T]o be actionable abuse under APSA, the negligent act or acts (1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem or problems that caused the incapacity.

*Id.* ¶ 16. Relying, in part, on § 46-455(M), the court rejected the arguments of the defendants and the amici curiae that the MMA provides the exclusive remedies for a single, or even a series of, negligent medical acts and that "something more" was required before such claims could be regarded as abuse for purposes of APSA. *Id.* ¶¶ 18-21. It concluded that "when the requirements" it had identified "are met, acts of medical negligence, including a single act in some situations, may provide a basis for an APSA action." *Id.* ¶ 22. Thus, we disagree with Blackburn's assertion that in *Estate of McGill*, our supreme court rejected the argument that "APSA claims are the same as medical malpractice claims." This assertion fails to recognize the nuances the supreme court identified with respect to APSA claims that are based on medical negligence and its acknowledgment that APSA and MMA claims can be interrelated and not mutually exclusive.

¶27    We also reject Blackburn's argument that in *Seisinger v. Siebel*, 220 Ariz. 85, 203 P.3d 483 (2009), our supreme court "implicitly rejected" Cornerstone's argument that "§ 12-2604 applies in APSA cases." The issue the court stated it was addressing in *Seisinger* was whether "§ 12-2604(A), which governs proof of the standard of care in medical malpractice cases, violates the separation of powers doctrine." 220 Ariz. 85, ¶ 1, 203 P.3d at 485. The court did not address the question we are addressing here. Indeed, nothing in *Seisinger* suggests the plaintiff in that case was a vulnerable adult. Rather, the plaintiff's claim was based on a single incident of medical negligence—the administering of a spinal epidural by an anesthesiologist—and, presumably, the complaint was filed under the MMA. *Id.* ¶ 2. *Seisinger* simply has no bearing on the issue before us, and the court's use of the term, "medical malpractice action" in that case does not restrict application of § 12-2604 to claims brought under the MMA.

¶28    Nor do we agree with Blackburn's suggestion that applying § 12-2604 to APSA claims is contrary to the purposes of APSA and the supreme court's acknowledgment in *Estate of McGill* and *Denton* that APSA was intended to supplement, not restrict, a vulnerable adult's right to assert a claim for damages resulting from the adult's neglect or abuse by a caregiver. *See Estate of McGill*, 203 Ariz. 525, ¶¶ 19, 21-22, 57 P.3d at 389-90; *Denton*, 190 Ariz. at 155-56, 945 P.2d at 1286-87. As Blackburn correctly notes, § 46-455(O) states: "A civil action authorized by this section is remedial and not punitive and does not limit and is not limited by any other civil remedy or criminal action or any other provision of law. Civil remedies provided under this title are

18

supplemental and not mutually exclusive." We fail to see how applying a substantive rule of law based on the common law and designed to ensure the expertise of a witness testifying about the medical standard of care, *see Seisinger*, 220 Ariz. 85, ¶ 42, 203 P.3d at 494, to medical-negligence-based APSA claims, is the kind of limitation on the rights and remedies afforded under APSA that would be contrary to or offend § 46-455(O) and *Estate of McGill* or *Denton*.

¶29 Here, despite having found § 12-2604 inapplicable, after applying the test in *Estate of McGill*, the respondent judge concluded correctly that Blackburn's medical negligence claims were properly asserted under APSA. We therefore turn to the respondent's conclusions about Black's qualifications to provide an expert opinion on the various standards of care.

## QUALIFICATION OF BLACKBURN'S EXPERT UNDER § 12-2604

¶30 Blackburn has designated Black as his standard-of-care expert to testify as to prevailing standards of care as to registered nurses (RNs), licensed practical nurses (LPNs), certified nursing assistants (CNAs), and other unlicensed staff in the following areas: failure to prevent the development and worsening of pressure sores based on the failures of RNs, LPNs, and CNAs in turning and repositioning Billie Jo; failure of RNs and LPNs to follow physician's orders, particularly with respect to wound care; failure of nursing managers to assure adequate nursing staff for Billie Jo; failure of nursing and other staff to provide adequate nutrition; failure of all nursing staff to properly document care; and, failures of the hospital executive director and nursing home administrator by

19

failing to ensure there were sufficient members of trained staff to provide Billie Jo with adequate assistance, treatments, and supervision. It appears that she also is expected to testify about the standard of care for any physical therapists (PT) who may have worked with Billie Jo.

¶31 In ruling on Cornerstone's motion to preclude certain testimony by Black, the respondent judge found Black "qualified under A.R.S. § 12-2604 to give opinion testimony on the subject of nursing." The respondent noted that, at the hearing on the motion, Cornerstone had conceded Black was qualified to testify on that subject but had urged the respondent to limit her testimony to wound care. The respondent refused, finding the proposed limitation "unduly restrictive." The respondent then turned to whether Black was qualified under Rule 702 to render an opinion about "nutrition, staffing, CNA's and nursing."

¶32 With respect to opinions regarding nutrition, the respondent judge found Black not qualified to testify about the standard of care "regarding the actions of the nutritionists involved in the care of Mrs. Blackburn," noting, however, it did not appear Blackburn "intend[ed] to elicit standard of care testimony regarding the actions of the nutritionists in this case and none will be allowed." But, the respondent did find her qualified to "provide opinion testimony regarding the nursing/care staffs' interaction with the nutritionists." The respondent also found Black had "the necessary expertise and foundation to opine regarding the actions of CNAs," reasoning that "CNAs are, by definition, assistants to the nursing staff." Under the category, "nursing staff," the

respondent also found Black qualified for purposes of Rule 702 to "render opinions about the actions" of charge nurses. With respect to staffing issues, however, the respondent stated it was not "a question of requisite expertise per Evidence Rule 702 but rather a question of adequacy of foundation per Evidence Rule 703." Although the respondent found Black had "the necessary expertise to opine that a facility did not have enough staff to adequately address the needs of the facility's patients," the respondent was not "convinced [she] ha[d] the necessary foundation to render staffing opinions in this case," precluding her testimony.

¶33        Cornerstone does not appear to challenge the respondent judge's conclusion that Black is qualified under § 12-2604 to give standard-of-care testimony regarding, and to evaluate the conduct of, RNs who provided general nursing care to Billie Jo. But Cornerstone argues the respondent erred by determining Black was qualified to testify about the standard of care and conduct of other nursing staff and physical therapists based on Rule 702, rather than § 12-2604, insisting that under the statute, she is not qualified.

¶34        Section 12-2604(A) provides that a person may not give standard-of-care testimony unless the person is "a health professional in this state or another state" and the person meets certain criteria. Section 12-2604(A)(1) provides specific criteria that apply when the person whose conduct is at issue is a specialist. Additional criteria that apply broadly to both specialists and nonspecialists are set forth in § 12-2604(A)(2), which provides as follows:

> 2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of

21

the person's professional time to either or both of the following:

     (a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.

     (b) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant and, if the defendant is or claims to be a specialist, in an accredited health professional school or accredited residency or clinical research program in the same specialty or claimed specialty.

When the testimony is offered against or on behalf of a health care professional in an action against the professional's health care-institution employer, subsection A applies "as if the health professional were the party or defendant against whom or on whose behalf the testimony is offered." § 12-2604(B).

¶35     For purposes of a civil action against a health care professional, an "expert" is "a person who is qualified by knowledge, skill, experience, training or education to express an opinion regarding a licensed health care professional's standard of care or liability for the claim." § 12-2603(H)(1)(c). Although there is no definition of "health care professional" in the definition statute, § 12-2601, or any other statute in this chapter, the legislature defined a "licensed professional" in § 12-2601(3) as "a person, corporation, professional corporation, partnership, limited liability company, limited liability partnership or other entity that is licensed by this state to practice a profession or occupation under title 20 or 32 or that is admitted to the state bar."

22

**¶36** Cornerstone correctly points out that RNs, LPNs, CNAs, and PTs are licensed in Arizona under different statutory provisions. *See* A.R.S §§ 32-1632 (RN); 32-1637 (LPN); 32-1645 (CNA); 32-2022 (PT). It argues that because Black is not licensed as anything but an RN, she "should not be permitted to offer standard of care criticisms as to those care providers who are licensed in areas other than her area of RN licensure." We disagree.

**¶37** Cornerstone appears to conflate the concept of medical specialists, which is governed primarily by § 12-2604(A)(1), with licensed professionals, assuming incorrectly that because there are separate licensing provisions for RNs, LPNs, and CNAs, each is its own specialty. Thus, it relies on this court's decision in *Sanchez,* in which we stated, "in the plain, unambiguous language of § 12-2604(A), our legislature has determined that an expert in one field may not under any circumstances testify as an expert on the standard of care for a specialist in another field." 218 Ariz. 317, ¶ 17, 183 P.3d at 1290. But the question in *Sanchez* was whether, in a medical malpractice action based on the theory of res ipsa loquitur, a physician who was board-certified as an orthopedic surgeon, a clear medical specialty, could testify about the standard of care for a board-certified anesthesiologist, also a medical specialty. *Id.* ¶ 8. We could find nothing in the statutes permitting courts to relieve litigants of the statutory requirement of identifying a qualified standard-of-care expert based solely on the theory of liability, and concluded that § 12-2604(A)(1) renders an expert from one medical specialty unqualified to testify about the standard of care for a different specialty. *Id.* ¶¶ 16-17.

¶38     In *Baker*, we found the statute ambiguous because the legislature had failed to define the term "specialty" in § 12-2604.  228 Ariz. 587, ¶ 7, 269 P.3d at 1214.  And we stated in *Lo*, as we had in *Baker,* that "the legislature intended the term 'specialty,' as used in § 12-2604(A)(1), to refer to the twenty-four specialty boards established by the American Board of Medical Specialties (ABMS)."  230 Ariz. 457, ¶ 5, 286 P.3d at 802, *citing Baker*, 228 Ariz. 587, ¶¶ 7-8, 13, 269 P.3d at 1214-15.  We left open in *Lo*, however, the question "whether the term 'specialty' as applied to other health care professionals would be governed by other specialty boards."  *Id*. n.2.  For purposes of this case, after considering the levels of licensing requirements for nursing professionals as well as the purpose of and intent behind the statute, we conclude that the distinctions between an RN, an LPN, and a CNA does not, as Cornerstone seems to suggest, make them specialties under § 12-2604(A)(1).  Nor is each a separate "health profession" for purposes of § 12-2604(A)(2).  They merely reflect varying levels of education, experience, and, consequently, expertise in the broad health profession of nursing.

¶39     Our conclusion is supported by the licensing statutes themselves, as well as other statutes that pertain to these vocations and relevant provisions of the Arizona Administrative Code.  These authorities place the RN at the highest qualification level among nursing professionals.  *See* A.R.S. §§ 32-1601(4), (18), and (20) (defining RN and nursing practice), (14) (supervision of CNAs by "licensed nursing staff member"), (15) and (16) (defining LPN and practical nursing; requiring supervision of LPN by RN or physician); 32-1632 (qualifications for RN); 32-1633 (examination of RN); 32-1637

24

(qualifications for LPN); 32-1638 (examination of LPN); 32-1645 (qualifications for CNA); 32-1647 (examination of CNA).

¶40        Nursing is among the various professions and occupations the code recognizes and regulates. *See generally* Ariz. Admin. Code R4-19-101 through R4-19-815. "Nursing practice" is defined broadly as, "assisting individuals or groups to maintain or attain optimal health, implementing a strategy of care to accomplish defined heath goals, and evaluating responses to care and treatment." Ariz. Admin. Code R4-19-101. RN, LPN, and CNA are identified and defined. *Id.* Referring to the respective licensing statutes, separate provisions of the code specify the requirements that must be fulfilled before an individual may be authorized to practice in each of these subspecies of nursing, identifying the educational and clinical programs for each, and prescribing the duties and responsibilities attendant to being an RN, an LPN, or a CNA. *See* Ariz. Admin. Code R4-19-205, 206 (identifying nursing programs and curriculum for RN and LPN); R4-19-301, 312 (discussing examination and practice requirements for RN and LPN); R4-19-402 (standards related to RN); R4-19-401 (standards related to LPN); R4-19-801 through 815 (training, certification, and conduct standards for CNA). The rigorous certification requirements for an RN as well as the supervisory positions RNs hold with respect to LPNs and CNAs, make clear that the RN is the most qualified of the three in terms of education and experience required for certification. *See, e.g.*, Ariz. Admin. Code R4-19-101 (defining "traineeship" as "clinical learning experience" in "approved nursing assistant training program" under supervision of RN or LPN); R4-19-401(A), (B)

25

(providing standards for LPN, identifying scope of practice, acknowledging LPN to work under supervision of RN or physician, and specifying limitations on LPN practice); R4-19-402 (providing standards for RN, identifying scope of practice and duties, and specifying duty includes supervising LPN); R4-19-801(A) (providing nursing assistant student works "under the supervision of a licensed nurse to provide care").

¶41     It would be absurd to conclude that an RN is not qualified to provide expert opinion on the standard of care for professions that require more limited skills than are required of a registered nurse on the ground that the RN is overqualified. As we stated in *Lo*, "'[c]ourts must, where possible, avoid construing statutes in such a manner as to produce absurd . . . results.'" 230 Ariz. 457, ¶ 11, 286 P.3d at 804, *quoting Patches v. Indus. Comm'n*, 220 Ariz. 179, ¶ 10, 204 P.3d 437, 440 (App. 2009). We therefore refused to read § 12-2604(A)(1) "to require that a testifying expert match each specialty of a party with multiple specialties" because the result could be "unmanageable and absurd." *Id*. Based on a common-sense interpretation of the statute that effectuates its intended purpose, we conclude that nursing is the "health profession" for purposes of § 12-2604(A)(2), RNs, LPNs, and CNAs are subcategories of that profession, and within the nursing hierarchy, RNs are the most qualified.

¶42     We conclude that, as an RN with extensive experience who taught other nurses within the year preceding the period in 2008 during which Billie Jo was hospitalized at Cornerstone, Black is qualified to testify about the standard of care applicable to any RN, LPN, or CNA who was involved in Billie Jo's care. This

26

conclusion does not thwart the legislative purpose behind § 12-2604 of ensuring "'that physicians,'" or, in this case, nurses, "'testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation.'" *Lo*, 230 Ariz. 457, ¶ 11, 286 P.3d at 804, *quoting Awsienko*, 227 Ariz. 256, ¶ 13, 257 P.3d at 178. Indeed, that purpose would be served here.

¶43 The record, which includes Black's affidavit, curriculum vitae, and deposition, establishes unequivocally she is qualified under § 12-2604 to testify about the areas Blackburn has proposed, subject to the limitations the respondent judge imposed. She is currently an RN in Nebraska and previously was an RN in Minnesota; she is certified as a plastic-surgical nurse and wound-care nurse, and previously was certified as a continence-care nurse; she previously was a certified registered nurse; and she is a fellow with the American Professional Wound Care Association. As noted earlier, she earned a Ph.D. in nursing, defending her dissertation on the healing of pressure ulcers. Black has been teaching nursing at the University of Nebraska Medical Center, College of Nursing, since 1982; since 2004, she has been an associate professor. The record establishes that "[d]uring the year immediately preceding the occurrence giving rise to the lawsuit, [she] devoted a majority of [her] professional time to . . . [t]he instruction of students in an accredited health professional school . . . or clinical research program in the same health profession as" the RNs, LPNs, and CNAs who cared for Billie Jo between April and July 2008 at Cornerstone. § 12-2604(A)(2). Having spent the majority of her professional time during the relevant period teaching nurses, Black is qualified under the

27

statute to provide the proposed standard-of-care testimony. And as the respondent found, she can provide such testimony regarding nurse-staffing needs for a patient like Billie Jo that are nursing related, rather than administrative based, as well as nutritional issues that are related to nursing care.[4]

## CONCLUSION

**¶44** Although the respondent judge erred in finding § 12-2604 did not apply to this APSA case, he correctly found Black qualified to provide standard-of-care testimony regarding the conduct of the RNs, LPNs, and CNAs involved in Billie Jo's care while at Cornerstone, subject to some limitations. Thus, although the respondent reached this conclusion as to LPNs and CNAs based solely on the requirements of Rule 702, ultimately he did not abuse his discretion. Consequently, for the reasons stated, we accept jurisdiction of this special action but deny relief.


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

---

[4]We do not address Cornerstone's contention that Black is not qualified to testify about the standard of care for physical therapists. The respondent judge did not address that question; therefore, we will not do so in the first instance.