NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

PEGGY STITH,
*Plaintiff/Appellant,*


*v.*


THE ENSIGN GROUP, INC., a
Delaware Corporation, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 17-0363
FILED 11-1-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2016-050619
The Honorable Susan M. Brnovich, Judge, *Retired*

**AFFIRMED**

---

COUNSEL

Law Office of Ilya E. Lerma, LLC, Phoenix
By Ilya E. Lerma
*Co-Counsel for Plaintiff/Appellant*

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Co-Counsel for Plaintiff/Appellant*

Ensign Services, Inc., Higley
By Michael J. Ryan
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

**¶1**　　　　Peggy Stith sued a skilled-nursing facility and its parent company for injuries she sustained while a patient. The superior court granted a motion by the defendants (collectively, "Ensign") to compel arbitration of all of Stith's claims except medical malpractice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Stith entered an Ensign nursing/rehabilitation facility in Glendale to recover from back surgery. After Stith had been there a few days, Ensign staff presented her with several form contracts, including a stand-alone arbitration agreement, which she signed. Several days later, Stith sustained traumatic brain damage when she hit her head while staff was helping her move from a wheelchair to her bed.

**¶3**　　　　After Stith filed suit, Ensign moved to compel arbitration. Ensign acknowledged that the arbitration agreement excluded Stith's claim for medical negligence, but argued the court should compel arbitration of her claims for violation of the Adult Protective Services Act ("APSA"), Arizona Revised Statutes ("A.R.S.") sections 46-451 to -459 (2018); "negligent training and supervision," intentional infliction of emotional distress, and punitive damages.[1] After an evidentiary hearing, the superior court granted Ensign's motion and entered an order compelling arbitration of all claims except Stith's claim for medical malpractice. The court, however, denied Ensign's request to stay the malpractice claim pending the arbitration, ruling "that discovery on all counts should proceed together as it would be inefficient to conduct discovery at different times."

**¶4**　　　　Stith moved for reconsideration, contending that, pursuant to *Cornerstone Hospital of Southeast Arizona, L.L.C. v. Marner ex rel. County of Pima*, 231 Ariz. 67, 72, ¶ 14 (App. 2012), the superior court was required to

---

[1]　　　　Absent material revision after the relevant date, we cite the current version of a statute or rule.

hear the malpractice and the APSA claims together. The court denied the motion, stating that although *Cornerstone* and *Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525 (2002), "make clear that an APSA case may be based on a medical malpractice act . . . that does not make them the same." The court then entered a final judgment under Arizona Rule of Civil Procedure 54(b).

¶5        Stith timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

## DISCUSSION

### A.        Purported Waiver of Contract-Interpretation Argument.

¶6        Stith argues for the first time on appeal that properly interpreted, the arbitration agreement applies to none of the claims in her complaint. For its part, Ensign contends that we may not address this issue because Stith did not first present it to the superior court.

¶7        As Ensign argues, we generally do not consider arguments raised for the first time on appeal. *See, e.g., State v. Vera*, 235 Ariz. 571, 574, ¶ 9 (App. 2014). But "that principle is jurisprudential, not jurisdictional." *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 56, ¶ 13 (2017). In support of its contention that Stith waived the argument, Ensign cites *Campbell v. Warren*, 151 Ariz. 207, 208 (App. 1986). In *Campbell*, however, the issue was whether the appellate court could consider parol evidence of the parties' intent not offered in the superior court to interpret the contract at hand. *Id.* No such evidence is at issue here. And the contract-interpretation issue Stith raises is a matter of law, which we review *de novo*. *See* A.R.S. § 12-3006(B) (2018) ("court shall decide whether . . . a controversy is subject to an agreement to arbitrate"); *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 10 (App. 2018).

¶8        In interpreting a contract, the court of appeals "has discretion to read and interpret [it] correctly and is not necessarily limited to the arguments made by the parties." *Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 143, ¶ 10 (App. 2002). This is particularly so when the issue is fully argued on appeal. *Id.* at 143, ¶ 11; *see Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 393, ¶ 21, n.7 (App. 2014) (appellate court may exercise its discretion when "issue can be resolved as a matter of law").

¶9        In our discretion, we will address Stith's argument that the arbitration agreement does not apply to her claims. *See Liristis*, 204 Ariz. at

143, ¶ 10 ("[W]here a legal theory that a party does advance is grounded on a contract that is before the court, the court does have a duty to read the contract without [blinders] on, so that it can discern the meaning and applicability of its provisions correctly.") (quoting *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1133, n.12 (D.C. 2001)).

**B.      Scope of the Arbitration Agreement.**

**¶10**        "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51, ¶ 11 (1999).  In interpreting a contract, our purpose is to determine and enforce the parties' intent. *Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255, ¶ 14 (App. 2017).  "When the provisions of the contract are plain and unambiguous upon their face, they must be applied as written." *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24 (2008) (quotation omitted).

**¶11**        The Arbitration Agreement is titled "**ARBITRATION OF DISPUTE OTHER THAN MEDICAL MALPRACTICE**."   Its first paragraph states, in relevant part:

> The parties understand that, except as provided below, *any claim other than a claim for medical malpractice arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which alleges violations of the Adult Protective Services Act, A.R.S. §46-455, et.seq.,* [sic] or which seeks an award of punitive damages or attorney's fees, *will be determined by submission to neutral arbitration* as provided by Arizona Law, and not by a lawsuit or court process, except as Arizona law provides for judicial review of arbitration proceedings.

(Emphasis added.)

This long sentence plainly states that, unless excepted, "any claim" Stith might bring will be subject to arbitration.  The issue is whether the agreement excepted from arbitration just one claim (for medical malpractice) or five claims (including medical malpractice).

**¶12**        In her opening and reply briefs, Stith argued the contract excludes a series of claims:

1.  medical malpractice arising out of the provision of services by the Facility,

2.  the admission agreement, the validity, interpretation, construction, performance and enforcement thereof,

3.  violations of APSA,

4.  punitive damages, and

5.  an award of attorney's fees.

**¶13** By contrast, Ensign argues the contract should be read as if there were commas before and after "other than a claim for medical malpractice." It contends that, as interpreted, the contract excludes from arbitration *only* a claim for medical malpractice, as follows:

> *The parties understand that, except as provided below, any claim[,] other than a claim for medical malpractice[,]* arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which alleges violations of the Adult Protective Services Act, A.R.S. §46-455, <u>et.seq.,</u> [sic] or which seeks an award of punitive damages or attorney's fees, *will be determined by submission to neutral arbitration* as provided by Arizona Law, and not by a lawsuit or court process, except as Arizona law provides for judicial review of arbitration proceedings.

Put differently, under Ensign's argument, with the sole exception of a medical malpractice claim, the parties agreed to arbitrate

> any claim . . . arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which alleges violations of the Adult Protective Services Act, A.R.S. §46-455, <u>et.seq.,</u> [sic] or which seeks an award of punitive damages or attorney's fees.

**¶14** Stith cites *IB Property Holdings L.L.C. v. Rancho Del Mar*, 228 Ariz. 61 (App. 2011), and *DGG & CAR, Inc.*, for the well-established proposition that the court may not add "something to the contract which the parties have not put there." But without the commas, the sentence at issue in the contract does not make grammatical sense. *See Allstate Prop. &*

*Cas. Ins. Co. v. Watts Water Techs., Inc.*, 244 Ariz. 253, __, ¶ 12 (App. 2018) (court applies a "common-sense approach" when interpreting a contract, considering the contract's language and organizational structure). As noted, Stith argues the sentence lists a series of claims that are excluded from arbitration. That compels her to argue, however, that, read without the two commas, the list of exceptions includes a claim labeled "the admission agreement, the validity, interpretation, construction, performance and enforcement thereof." That phrase is not worded in parallel fashion to the other phrases in the purported series of exceptions, and in fact it describes no claim at all, but instead suggests the subject of a dispute that might give rise to a claim of some sort.

¶15        In supplemental briefing after oral argument, Stith suggested the phrase should be wrapped into the medical-malpractice exception, so that the agreement would except from arbitration "a claim for medical malpractice arising out of the provision of services at the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof." But that argument does not stand up: It is difficult to conceive how a medical malpractice claim might arise out of the "admission agreement" or the interpretation, performance or enforcement of that agreement.

¶16        When interpreting a contract, we examine the contract as a whole. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983) ("A clause in a contract, if taken by itself, often admits of two meanings, when from the whole contract there is no reasonable doubt as to the sense in which the parties use it.") (quoting *Climate Control, Inc. v. Hill*, 86 Ariz. 180, 188 (1960)). Here, when we are construing a form contract as it would have been understood by a lay person, we place considerable reliance on the title of the document: "**ARBITRATION OF DISPUTE OTHER THAN MEDICAL MALPRACTICE**," which appeared in boldface at the top of the single page document. This title reinforces Ensign's construction of the provision and significantly undercuts Stith's argument. Indeed, under Stith's argument, the title should have read: "Arbitration of Disputes other than Medical Malpractice, Adult Protective Services Act, Punitive Damages and Attorney's Fees."

¶17        Citing *Kitner v. Wolfe*, 102 Ariz. 164 (1967), Stith argues we should not rely on the title of the contract. But *Kitner* does not compel a different outcome here. The agreement in that case was titled "Lease Agreement and Guaranty," and the court enforced the guaranty, after quoting at length from Williston on Contracts, including the principle that

"[t]he writing will be read as a whole, and every part will be interpreted with reference to the whole." *Kitner*, 102 Ariz. at 166-68.

¶18    Similarly, we cannot ignore the fact that if we construe the arbitration agreement as Stith contends we should, we would have to conclude the parties intended to exclude almost any claim from arbitration. That is, reading the critical sentence as Stith advocates, the agreement would exclude not only any malpractice claim, but also any claim under APSA, any claim (apparently of any sort) concerning "the admission agreement, the validity, interpretation, construction, performance and enforcement thereof," and any claim seeking punitive damages or attorney's fees. That is hardly a common-sense reading of an agreement to arbitrate; reading the list of exceptions as Stith suggests, it is difficult to fathom what meaningful claim would be subject to arbitration.

¶19    Stith argues that, at a minimum, the agreement is ambiguous, a proposition that Ensign conceded at oral argument before this court. Stith does not contend that ambiguity requires the court to accept parole evidence of the parties' intent; as her counsel noted at oral argument, because of the injuries Stith suffered from her fall, she cannot testify about her understanding of the agreement. Instead, Stith argues that the presence of ambiguity requires the court to construe the contract against Ensign because it drafted the contract. But we do not turn to *contra proferentum* whenever a contract may be subject to differing interpretations. Before applying the interpretive principle that an ambiguous writing is construed against the drafter, we first apply other rules, including that we read the contract as a whole, "giving effect to the main purpose of the instrument, and interpreting the contract so as to make it effective and reasonable." *Phelps Dodge Corp. v. Brown*, 112 Ariz. 179, 181 (1975). As the *Phelps Dodge* court noted, quoting 3 Corbin on Contracts, § 559 (1960):

> It is frequently said that [*contra proferentum*] is to be applied only as a last resort. It should not be applied until other rules of interpretation have been exhausted; nor should it be applied unless there remain two possible and reasonable interpretations.

112 Ariz. at 181; *see Polk v. Koerner*, 111 Ariz. 493, 495 (1975) (*contra proferentum* is a secondary rule of contract construction that applies only when the meaning of a contract remains unclear after application of primary rules of construction). For the reasons stated, we conclude that the only reasonable construction of the agreement is that urged by Ensign, so *contra proferentum* does not apply.

## C.     Enforceability of the Arbitration Agreement as Construed.

¶20        After hearing evidence about the circumstances under which Stith received and executed the arbitration agreement, the superior court found the agreement was not procedurally unconscionable.  Based on Ensign's offer to pay the costs of the arbitration, the court also found the agreement not substantively unconscionable.

¶21        On appeal, Stith does not challenge those findings.  She argues instead that, as construed, the agreement is both procedurally and substantively unconscionable because its language gave her no idea that she was agreeing to arbitrate an APSA claim based on medical malpractice. For the same reason, she argues Ensign's interpretation of the agreement violates the doctrine of reasonable expectations.  *See Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 137, ¶ 17 (App. 2014).  As noted, Stith has not testified (and apparently cannot testify) to her understanding of the scope of the arbitration agreement.  Given that the title of the agreement plainly warned her that any claim other than medical malpractice would be subject to arbitration, we cannot accept Stith's argument that she must not have understood that the agreement would have that effect.

¶22        Stith further contends the agreement is unconscionable as applied here because its exclusion for a medical malpractice claim turns out to be meaningless.  Stith argues that because her malpractice claim is essentially the same as her APSA claim, compelling arbitration of her APSA claim effectively precludes her right under the agreement to have a judicial determination of her medical malpractice claim.  Citing *Cornerstone*, 231 Ariz. at 74, ¶ 21, she argues that "any APSA claim that is based on medical malpractice (including the one here) *is* a medical malpractice claim."

¶23        We held in *Cornerstone*, 231 Ariz. at 69, ¶ 1, that when a plaintiff seeks relief under APSA based on medical negligence, the plaintiff must comply with the expert-witness requirements of A.R.S. § 12-2604 (2018).  Stith points out that in arriving at that conclusion, we stated that the allegations supporting the APSA claim against the medical professionals in that case "are claims of . . . medical malpractice."  *Cornerstone*, 231 Ariz. at 74, ¶ 21.  As relevant here, APSA allows "[a] vulnerable adult whose life or health is being or has been endangered or injured by neglect" to sue "any person or enterprise that has been employed to provide care, [or] that has assumed a legal duty to provide care" for the adult.  A.R.S. § 46-455(B) (2018).  The point we were making in the passage Stith cites is that an APSA claim based on alleged negligence by a licensed medical professional requires the same expert-witness testimony as a medical malpractice claim

under A.R.S. § 12-2604. In that regard, the two claims are the same. But the remedies afforded by the two claims are different: Although a plaintiff suing for common-law medical malpractice generally may recover only actual and consequential damages, a plaintiff suing under APSA may recover attorney's fees and costs, in addition to damages. A.R.S. § 46-455(H)(4).

¶24 Accordingly, we reject Stith's contention that the agreement is unconscionable due to lack of notice or some overlap between her medical malpractice and APSA claims.

## D. Other Issues.

¶25 At this court's request, the parties provided supplemental briefs on a series of issues concerning the potential preclusive effects an arbitration award entered on Stith's APSA claim might have on her non-arbitrable claim for medical malpractice.

¶26 As noted above, the superior court did not stay the latter claim, but allowed it to proceed on a parallel path with the arbitration of Stith's other claims, including her claim under APSA. In their supplemental briefs, the parties agree that if the arbitration concludes before the litigation on the malpractice claim, given the common facts underlying both claims, at a minimum, collateral estoppel, or issue preclusion, would apply to the malpractice claim. *See* Restatement (Second) of Judgments § 84(1) & cmt. c (1982) ("When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has.").

¶27 Responding to the court's request for supplemental briefing, Stith argues that in the event the arbitration concludes unfavorably to her, it will render the arbitration agreement substantially and procedurally unconscionable because she will have been denied her contractual right to litigate a medical malpractice claim in court. Stith argues that to the extent the arbitration will wind up determining the outcome of her medical malpractice claim, Ensign's promise that she would not be compelled to arbitrate a malpractice claim will be rendered false, in violation of her reasonable expectations under the arbitration agreement. Finally, Stith argues in her supplemental brief that in the event the arbitration outcome will have preclusive effects on her right to litigate her claim for damages for alleged medical malpractice, the result will be a violation of her rights under Article 18, Section 6, of the Arizona Constitution. In support of this

contention, Stith cites *Baker v. University Physicians Healthcare*, 231 Ariz. 379, 388, ¶¶ 35-36 (2013) ("A court may not, consistent with the Arizona Constitution, prohibit a plaintiff from bringing a common law tort action.").

**¶28** In its supplemental brief, Ensign argues that granting preclusive effect to the APSA arbitration award would not render the agreement substantively unconscionable because that effect would not be one-sided, but would apply regardless of which side prevails in the arbitration. Ensign further argues that applying preclusive effect to an arbitration award on the APSA claim would not violate Stith's reasonable expectations under the agreement because she will have a full and fair opportunity to litigate that claim in the arbitration. Ensign also argues that the Anti-Abrogation Clause of the Arizona Constitution would not apply to such an outcome because a private arbitration agreement cannot constitute state action.

**¶29** After considering the parties' supplemental briefs, it is plain that the issues on which this court sought briefing are premature. Until the dual-track proceedings that the superior court has ordered are allowed to play out, any issue about the preclusive effects of one of those tracks on the other, and the legal implications of those effects, is not ripe, and a decision on any of those issues might turn out to be an advisory opinion. *See Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6 (1985).

## CONCLUSION

**¶30** For the reasons stated above, we affirm the superior court's order compelling arbitration and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA