NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

KORTNEY RAE ST. GEORGE and JOHN ST. GEORGE, wife and
husband, *Plaintiffs/Appellants*,

*v.*

CHARLES STEVEN PLIMPTON, M.D., individually; C. STEVEN
PLIMPTON M.D., P.C., an Arizona professional corporation; ELLEN
MARIE FRANKLIN, CNM, individually, *Defendants/Appellees*.

No. 1 CA-CV 15-0144
FILED 11-1-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2012-005446
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

---

COUNSEL

Rivera Law Group PC, Phoenix
By Sal J. Rivera
*Counsel for Plaintiffs/Appellants*

Kent & Wittekind PC, Phoenix
By Richard A. Kent and Cynthia Y. Patane
*Co-Counsel for Plimpton Defendants/Appellees*

Jones, Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Plimpton Defendants/Appellees*

Campbell Yost Clare & Norell PC, Phoenix
By Stephen C. Yost
*Counsel for Defendant/Appellee Ellen Marie Franklin*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

---

**G O U L D**, Judge:

¶1        Kortney Rae St. George ("St. George") and John St. George (collectively, "the St. Georges") appeal from the superior court's order granting summary judgment to Charles Steven Plimpton, M.D. and C. Steven Plimpton, M.D., P.C. (collectively "Dr. Plimpton") and Ellen Marie Franklin, CNM ("Nurse Franklin").  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        This medical malpractice case is based on obstetrical and nurse-midwifery services rendered to St. George.  The St. Georges allege Nurse Franklin, a certified nurse midwife, negligently applied pubic pressure during the delivery of their baby, causing St. George's pubic bone to separate.

¶3        On April 6, 2012, the St. Georges filed a medical malpractice action against Dr. Plimpton and Nurse Franklin.[1]  The St. Georges also alleged a separate claim for negligent supervision against Phoenix Baptist Hospital.

¶4        In January 2013, the St. Georges filed a certification stating that expert testimony was necessary to prove their medical malpractice claims.  *See* Ariz. Rev. Stat. ("A.R.S.") section 12-2603(A) (requiring a claimant in a medical malpractice action to certify, at the time her claim is filed and served, "whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim.")  On February 22, 2013, the St. Georges disclosed Dr. Harry Watters

---

[1]        The St. Georges also sued Abrazo Healthcare, and VHS of Phoenix. All of these defendants, including Phoenix Baptist Hospital, were later dismissed from the lawsuit without prejudice.

2

("Dr. Watters"), a board-certified obstetrician/gynecologist, would testify as their standard of care expert for both Dr. Plimpton and Nurse Franklin.

¶5        In March 2013, the St. Georges disclosed Dr. Watters' preliminary expert opinion affidavit as required by A.R.S. § 12-2603(B).  In his affidavit, Dr. Watters avowed that he has "supervised Certified Nurse-MidWifes (CFM) throughout [his] career," and describes various deviations in the standard of care by Nurse Franklin.   Dr. Watters also asserted there was "inadequate doctor supervision of" Nurse Franklin, and "[t]he doctor should have been much more involved in this traumatic delivery."

¶6        Dr. Watters was deposed in October 2014.  At his deposition, Dr. Watters testified that, in his opinion, Nurse Franklin fell below the standard of care for a certified nurse midwife.  Dr. Watters also admitted, however, that although he has worked with and supervised nurse mid-wives throughout his career, he has never practiced as a nurse-midwife.

¶7        During his deposition, Dr. Watters also testified that Dr. Plimpton's "relationship" with Nurse Franklin fell below the standard of care.  However, Dr. Watters could not specify any act or omission by Dr. Plimpton that fell below the standard of care as to his treatment of St. George.  Specifically, Dr. Watters testified:

> Q:      So as you sit here today, you cannot state, to a reasonable degree of probability, that Dr. Plimpton actually fell below the standard of care?
>
> A:      That's correct.

¶8        After his deposition, Dr. Watters submitted a letter entitled "Correction to Deposition."[2]  In his letter, Dr. Watters again opined that Nurse Franklin fell below the standard of care.  Dr. Watters also noted that Dr. Plimpton "violated his obligation by hiring a nurse midwife who is not working under a protocol in his office and was not given a set of protocols to appropriately monitor patients."

¶9        In February 2014, Dr. Plimpton and Nurse Franklin moved for summary judgment.   Dr. Plimpton argued summary judgment was warranted because the St. Georges failed to present expert testimony that

---

[2]      The superior court denied Dr. Plimpton's motion and Nurse Franklin's joinder to strike the corrections letter as a sham affidavit setting forth contradictory opinions to Dr. Watters' deposition testimony.

Dr. Plimpton deviated from the standard of care. Nurse Franklin moved for summary judgment on the grounds Dr. Watters was not qualified to testify as a certified nurse midwife expert.

¶10 The court held oral argument on the motions on December 5, 2014, and issued a minute entry granting summary judgment in favor of Dr. Plimpton and Nurse Franklin. The St. Georges timely appealed.

## LEGAL DISCUSSION

### I. Standard of Review

¶11 We review de novo the grant of summary judgment and view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the St. Georges, against whom the superior court granted judgment. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). We review for abuse of discretion the superior court's determination on expert qualifications. *Baker v. University Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013) ("*Baker II*"). Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the superior court's denial of an Arizona Rule of Civil Procedure ("Rule") 56(f) request for an abuse of discretion. *Grand v. Nacchio*, 214 Ariz. 9, 29, ¶ 73 (App. 2006).

### II. The Superior Court Correctly Granted Summary Judgment to Dr. Plimpton

¶12 To prove their medical malpractice claim against Dr. Plimpton, the St. Georges bear the burden of establishing (1) Dr. Plimpton breached the applicable standard of care, and (2) his breach proximately caused St. George's injury. A.R.S. § 12-563; *Kreisman v. Thomas*, 12 Ariz. App. 215, 220 (1970); *see Gurr v. Wilcutt*, 146 Ariz. 575, 581 (App. 1985) (in a medical malpractice case, a plaintiff must show the standard of care was breached to defeat a motion for summary judgment). With limited exceptions not applicable here, the St. Georges were required to prove a breach of the standard of care through expert testimony. *Barrett v. Samaritan Health Servs. Inc.*, 153 Ariz. 138, 141 (App. 1987).

¶13 Here, summary judgment was warranted because the St. Georges failed to present expert testimony showing that Dr. Plimpton breached the standard of care. During his deposition, Dr. Watters testified that he could not identify any standard of care violations by Dr. Plimpton.

Dr. Watters' "correction letter" also does not specify how Dr. Plimpton allegedly breached the standard of care.

¶14        The St. Georges argue, however, that there is sufficient expert testimony supporting their claim Dr. Plimpton negligently supervised Nurse Franklin.  In support of this argument, the St. Georges cite to Dr. Watters' preliminary affidavit, which states "[t]here was inadequate doctor supervision of the nurse-midwife," and Dr. Watters' deposition testimony that the physician/nurse midwife "relationship" fell below the standard of care.

¶15        The St. Georges never alleged a negligent supervision claim against Dr. Plimpton; rather, their allegation that Dr. Plimpton "failed to supervise" Nurse Franklin appears to be encompassed in their claim of medical malpractice, rather than an independent claim of negligent supervision.  *Cf. Humana Hosp. Desert Valley v. Super. Ct.*, 154 Ariz. 396, 400 (App. 1987) (stating that for a negligent supervision claim, a plaintiff must establish the employer knew or should have known that the employee "was not competent to provide certain care," and that the employer's failure to supervise the employee caused injury).  As a result, the St. Georges were required to prove, by means of expert testimony, the standard of care that applied to Plimpton in supervising a certified nurse midwife, and that Plimpton breached the standard of care.  A.R.S. § 12-563; *Barrett*, 153 Ariz. at 141.

¶16        The St. Georges' negligent supervision claim fails.  At his deposition, Dr. Watters never testified as to the standard of care Dr. Plimpton should have followed in supervising Nurse Franklin, or how Dr. Plimpton breached that standard.  Similarly, in his correction letter, Dr. Watters did not state what standard of care applied to Dr. Plimpton regarding his supervision of Nurse Franklin, a certified nurse midwife.  We find no error.

## III.    The Superior Court Correctly Granted Summary Judgment to Nurse Franklin

### A.    Expert Testimony is Required to Establish Nurse Franklin Breached the Standard of Care

¶17        The St. Georges argue that because Nurse Franklin violated regulations governing the practice of midwifery, A.R.S. §§ 36-751 *et seq*. and A.A.C. Title 9, Chapter 16, Nurse Franklin is negligent per se, and no expert testimony is required to prove a deviation in the standard of care.

¶18    The standard of care may be "established by a legislative enactment" or "adopted by the court from a legislative enactment." *Tellez v. Saban*, 188 Ariz. 165, 169 (App. 1996) (citing Restatement (Second) of Torts § 285, at 20 (1965)).  A person who violates a legislative enactment that establishes the standard of care or that has been adopted by a court as the relevant standard of care is negligent per se and the violation is conclusive as to negligence.  *Id.*; *Brannigan v. Raybuck*, 136 Ariz. 513, 517 (1983), *superseded by statute on other grounds as stated in Carrillo v. El Mirage Roadhouse, Inc.*, 164 Ariz. 364, 368 n.1 (App. 1990).

¶19    As a threshold matter, Nurse Franklin is not a midwife subject to regulation by the midwifery statutes and regulations.  Nurse Franklin is a certified nurse midwife, and while midwives are licensed by the Arizona Department of Health Services ("ADHS"), certified nurse midwives are certified by the Arizona State Board of Nursing ("ASBN").  A.R.S. § 36-753 (stating that a person desiring to obtain a license to practice midwifery shall apply to the director of ADHS); A.A.C. Title 9, Chapter 16, R9-16-101(7) (defining "certified nurse midwife" as an individual certified by the ASBN).  As a result, registered nurses certified by the ASBN as qualified nurse-midwives are exempt from the licensure requirements of the midwifery statutes.  A.R.S. §§ 36-752(A), (B)(2) (stating "no person may act as a midwife without being licensed pursuant to this article" . . .  except "[t]he following persons are exempt from the licensure requirements of this section. . . [a] registered nurse certified by the state board of nursing as a qualified nurse-midwife.")

¶20    The St. Georges argue, however, that the midwifery statutes apply to Nurse Franklin because she meets the definition of "midwife" in the midwifery statutes.  Under the midwifery statutes, a midwife is defined as "a person who delivers a baby or provides health care related to pregnancy, labor, delivery and postpartum care of the mother and her infant."  A.R.S. § 36-751(3).

¶21    We reject the St. Georges' argument because it would lead to absurd results. *See In re Zaritsky*, 198 Ariz. 599, 603 (App. 2000) (when interpreting a statute, "we presume that the legislature did not intend an absurd result and our construction must avoid such a consequence.")  The St. Georges' construction creates a confusing result; even though registered nurses are exempt from nurse midwife licensing requirements, they are nonetheless subject to all of the regulations that apply to nurse midwives. Additionally, accepting the St. Georges' construction means that anyone who delivers a baby—including an obstetrician—is subject to the midwifery statutes.

¶22        For these reasons, we agree with the superior court that the theory of negligence per se does not apply here and conclude that expert testimony was required to prove any deviation in the standard of care by Nurse Franklin. *Barrett*, 153 Ariz. at 141.

### B.        Dr. Watters is Not Qualified to Render Standard of Care Opinions against Nurse Franklin

¶23        Next, the St. Georges argue that if expert testimony is necessary, Dr. Watters is qualified to testify that Nurse Franklin breached the standard of care.

¶24        When a party certifies that expert testimony is required to establish the health care professional's standard of care, the party must serve a preliminary expert opinion affidavit stating "[t]he expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim."  A.R.S. § 12-2603(B)(1).  The qualifications for a standard of care expert are governed by A.R.S. § 12-2604. *Cornerstone Hosp. of Southeast Arizona, L.L.C. v. Marner*, 231 Ariz. 67, 73, ¶ 18 (App. 2012).

¶25        A.R.S. § 12-2604 requires that if a defendant health care provider is a specialist, the plaintiff's expert must also practice in the same specialty at the time of the events giving rise to the lawsuit.  A.R.S. § 12-2604(A)(1).  In addition, A.R.S. § 12-2604 requires all plaintiff's experts, including specialists, to have devoted a majority of their professional time to "[t]he active clinical practice of the same health profession as the defendant," and/or "[t]he instruction of students . . . in the same health profession as the defendant."  A.R.S. § 12-2604(A)(2)(a)-(b).  This clinical practice and/or instruction must take place "[d]uring the year immediately preceding the occurrence giving rise to the lawsuit." *Id.*

¶26        Nurse Franklin is a licensed registered nurse and a certified nurse midwife.  Thus, pursuant to A.R.S. § 12-2604, any expert testifying against her must be a nurse, or someone who spends the "majority" of his time instructing nurses. *Cornerstone*, 231 Ariz. at 79, ¶ 41 (stating that where the defendant health care provider in a case involving allegations of medical negligence is a registered nurse, nursing is the health profession for purposes of A.R.S. § 12-2604(A)(2)); *Rasor v. Northwest Hosp., LLC*, 239 Ariz. 546, 567, ¶ 11 (App. 2016) (holding that nursing qualifies as a "health profession" for the purposes of A.R.S. § 12-2604(A)(2)).  Moreover, because Nurse Franklin is certified by the ASBN as a certified nurse midwife, an expert against her must likewise be a certified nurse midwife. *Baker*, 231

Ariz. at 385, ¶ 21 (construing "'specialty' for purposes of § 12-2604 as referring to a limited area of medicine in which a [health care provider] is or may become board certified").

**¶27**        Here, the superior court correctly ruled that Dr. Watters is not qualified under A.R.S. § 12-2604(A)(2) to testify against Nurse Franklin. Dr. Watters is not a nurse or a certified nurse midwife. Additionally, there is no evidence showing he spent the majority of his time during the year leading up to this lawsuit instructing nurses or certified nurse midwives. A.R.S. § 12-2604(A)(2).

### C.        The Superior Court Did Not Abuse its Discretion in Declining to Grant Additional Time to Obtain an Expert

**¶28**        Finally, the St. Georges argue the superior court abused its discretion in denying their request for additional time to obtain a certified nurse midwife expert.

**¶29**        During oral argument on the motions for summary judgment, the St. Georges, for the first time, requested additional time to obtain a certified nurse midwife to testify against Nurse Franklin. The superior court denied their request.

**¶30**        Pursuant to Ariz. R. Civ. P. 56(f), a court may defer considering a summary judgment motion and allow the non-moving party time to obtain additional evidence. The St. Georges' oral motion did not, however, meet the requirements for Rule 56(f) relief.

**¶31**        In order to obtain Rule 56(f) relief, a party must

> submit a sworn statement specifically describing the reasons justifying delay, including '(1) the particular evidence beyond the party's control; (2) the location of the evidence; (3) what the party believes the evidence will reveal; (4) the methods to be used to obtain it; and (5) an estimate of the amount of time the additional discovery will require.'

*Grand*, 214 Ariz. at 29, ¶ 72 (internal citations omitted) (quoting *Magellan South Mountain Ltd. P'ship v. Maricopa Cty.*, 192 Ariz. 499, 502, ¶ 8 (App. 1998)).

**¶32**        It is undisputed that the St. Georges did not submit a sworn statement in compliance with Rule 56(f). Moreover, the St. Georges did not advise the superior court at oral argument that they had located a qualified

certified nurse midwife expert and/or that such an expert would be disclosed by a date certain. Additionally, the St. George's failed to advise the court how long it would take to obtain a qualified expert, or provide any other information that arguably would bring the request in compliance with Rule 56(f).

¶33 We also reject the St. Georges' argument that the court should have granted them additional time because, at the time their lawsuit was pending, the requirements of A.R.S. § 12-2604 were ambiguous. Specifically, the St. Georges contend that until *Baker II* was published by the Arizona Supreme Court in March 2013, it was unclear whether A.R.S. § 12-2604 required them to obtain a nurse or a certified nurse midwife expert to prove their claim against Nurse Franklin.

¶34 Here, the St. Georges certified expert testimony was necessary to prove their claims in January 2013, a month after Division Two of this court published *Cornerstone*, which confirmed that where the defendant health care provider is a registered nurse, nursing is the health profession for purposes of § 12-2604(A)(2). *Cornerstone*, 231 Ariz. at 79, ¶ 41 (published Dec. 7, 2012). At that time, the St. Georges had not disclosed their standard of care expert or submitted their preliminary expert opinion affidavit. Just two months later, our Supreme Court published *Baker II*, which construed "'specialty' for purposes of A.R.S. § 12-2604 as referring to a limited area of medicine in which a [health care provider] is or may become board certified." *Baker II*, 231 Ariz. at 385, ¶ 21 (published March 12, 2013).

¶35 Notwithstanding these two decisions clarifying the qualifications for experts under A.R.S. § 12-2604, the St. Georges disclosed Dr. Watters as their standard of care expert for Nurse Franklin. Additionally, they did not supplement their expert disclosure by the July 12, 2013, expert disclosure deadline with a nurse or nurse midwife expert.

¶36 When the St. Georges produced Dr. Watters for a deposition in January 2014 to testify about Nurse Franklin's standard of care, nine months had elapsed since *Baker II* had been issued, and over a year had elapsed since *Cornerstone* had been published. In February 2014, when Nurse Franklin filed her motion for summary judgment specifically challenging Dr. Watters' qualifications to testify as an expert under A.R.S. § 12-2604, the St. Georges did not seek Rule 56(f) relief to obtain a qualified expert. Indeed, it was not until December 2014, approximately two years after *Cornerstone* and *Baker II* were published, that the St. Georges sought leave to obtain a nurse or certified nurse midwife expert to prove their claim against Nurse Franklin.

¶37        Given these circumstances, we find the superior court did not abuse its discretion in declining to extend additional time to the St. Georges to obtain a qualified expert against Nurse Franklin.

## CONCLUSION

¶38        For the foregoing reasons, we affirm.  We award costs to Dr. Plimpton and Nurse Franklin upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA