IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**KARYN D. RASOR AND DONALD MILLER, WIFE AND HUSBAND,**
*Plaintiffs/Appellants/Cross-Appellees,*

*v.*

**NORTHWEST HOSPITAL, LLC DBA NORTHWEST MEDICAL CENTER,**
*Defendant/Appellee/Cross-Appellant.*

————————

No. CV-16-0134-PR
Filed October 18, 2017

————————

Appeal from the Superior Court in Pima County
The Honorable Leslie Miller, Judge
No. C20133700
**REVERSED**

Opinion of the Court of Appeals, Division One
239 Ariz. 546 (App. 2016)
**REVERED IN PART, VACATED IN PART, REMANDED**

————————

COUNSEL:

Kevin E. Miniat (argued), Miniat & Wilson, LPC, Tucson, Attorneys for
Karyn D. Rasor and Donald Miller

Kari B. Zangerle, Mary G. Isban (argued), Robert C. Stultz, Campbell, Yost,
Clare & Norell, P.C., Phoenix, Attorneys for Northwest Hospital, LLC, dba
Northwest Medical Center

Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson; JoJene
E. Mills, Law Office of JoJene Mills, P.C., Tucson; David L. Abney,

Ahwatukee Legal Office, P.C., Phoenix, Attorneys for Amicus Curiae
Arizona Association for Justice/Arizona Trial Lawyers Association

———————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF
JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES
BRUTINEL, TIMMER, GOULD, and LOPEZ joined.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1          This case involves challenges to qualifications for expert
witnesses in a medical malpractice action.  We hold that a defendant may
move for summary judgment based on a proposed expert's lack of requisite
qualifications under A.R.S. § 12-2604 without first challenging the
sufficiency of the expert affidavit under A.R.S. § 12-2603.  We also hold that,
pursuant to § 12-2604, an expert is unqualified to testify on standard of care
if she did not engage in active clinical practice or teaching during the year
immediately preceding the injury.

## I.    BACKGROUND

¶2          Plaintiff Karyn Rasor underwent surgery at Northwest
Medical Center ("NWMC").  After the operation, NWMC placed Rasor in a
medically induced coma in the intensive care unit ("ICU"). During this
time, Rasor developed a pressure ulcer over her tailbone.  The injury
worsened, ultimately requiring thirty-one debridement procedures and,
Rasor claims, resulting in permanent residual damage.  Rasor filed this
medical malpractice action against NWMC, alleging that the preventative
wound care provided by ICU nursing staff, specifically faulty
repositioning, caused her injuries.

¶3          After commencing the action, Rasor filed a certification
verifying the need for expert testimony to prove her claims pursuant to
§ 12-2603(A).  Rasor subsequently filed a preliminary expert affidavit
pursuant to § 12-2603(B) identifying Julie Ho, RN, as her expert on standard
of care and causation.  Ho was a certified wound care nurse who worked at
a long-term acute care facility performing admission assessments,

reassessments, and care planning during the year preceding Rasor's injury. She opined that NWMC had failed to adequately reposition Rasor during her recovery, thereby causing a pressure ulcer to develop, and failed to take necessary steps after discovering the ulcer, which then worsened.

¶4          After the expert disclosure deadline, NWMC deposed Ho. Rasor subsequently filed a preemptive motion to qualify Ho as an expert on standard of care, causation, and prognosis. Rasor alternately asked to identify another expert if the court precluded any of Ho's opinion evidence.

¶5          Shortly after Rasor filed her motion, NWMC moved for summary judgment, arguing that Ho did not qualify as an expert on standard of care or causation under § 12-2604, and therefore Rasor could not satisfy her burden on those elements of her claim and the case should be dismissed. Among other things, NWMC argued that Rasor needed an expert who was a certified ICU nurse, not a wound-care specialist.

¶6          At oral argument on Rasor's motion, the trial court found that Ho was qualified to testify about the standard of care for wounds and said, "I'm going to let you go with a wound care witness rather than an ICU nurse. You can take that to the bank, okay?" But the judge also expressed that "what I'm concerned about is whether or not she could testify as to causation." The court subsequently ruled that Rasor was permitted to introduce Ho's expert opinion "regarding wound care" and reserved the remaining issues for the summary judgment hearing.

¶7          At oral argument on NWMC's motion for summary judgment, Rasor again requested permission to find another expert if Ho's qualifications were found wanting. The trial court denied that request and granted the summary judgment motion without explanation.

¶8          Rasor appealed. (NWMC filed a cross-appeal regarding a discovery issue, which is not before us.) The court of appeals concluded that Ho was not qualified as a standard-of-care expert, holding that a certified ICU specialist rather than a wound-care expert was required under § 12-2604(A) and *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379 (2013), and, alternatively, if ICU nurses are considered generalists, Ho was not a practicing generalist in the year prior to Rasor's injury. *Rasor v. Nw. Hosp., LLC*, 239 Ariz. 546, 550–51 ¶¶ 9–12 (App. 2016). Because the trial court

properly granted NWMC's motion for summary judgment on this basis alone, the court of appeals did not address whether Ho was qualified under Evidence Rule 702 or whether she was competent to testify about causation. *Id.* at 552 ¶ 15 n.8.

¶9            The court of appeals ruled, however, that Rasor should have been allowed to find a different expert. *Id.* at 553 ¶ 19. Citing *Preston v. Amadei*, 238 Ariz. 124 (App. 2015), the court noted that when a defendant in a malpractice case challenges a plaintiff's preliminary disclosures of expert opinions, the plaintiff must be allowed to correct any deficiency pursuant to § 12-2603(F) ("Upon any allegation of insufficiency of the [expert] affidavit, the court shall allow any party a reasonable time to cure any affidavit, if necessary."). *Rasor*, 239 Ariz. at 553–54 ¶ 18. The court noted that, as in *Preston*, the defendant did not challenge the sufficiency of the preliminary expert affidavit, but rather challenged the expert's qualifications in a summary judgment motion after the expert disclosure deadline had passed. *Id.* For the reasons expressed in *Preston*, and because the trial court had previously "strongly indicated Ho's opinions would be admitted at trial," the court of appeals held that the trial court erred by denying Rasor's request to substitute a new expert. *Id.* at 534 ¶ 19.

¶10           Both parties sought review in this Court. We granted review to determine whether as a matter of law Ho was qualified to serve as an expert and, if not, whether the trial court should have granted Rasor an opportunity to find a new expert. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.      DISCUSSION

¶11           In reviewing a grant of summary judgment, we view the facts and reasonable inferences in the light most favorable to the non-prevailing party. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7 (2015). "Apart from issues of statutory interpretation, which we review de novo, we review trial court determinations of expert qualifications for an abuse of discretion." *Baker*, 231 Ariz. at 387 ¶ 30.

## A. Establishing and challenging expert qualifications

¶12        A plaintiff establishes medical malpractice by proving that (1) "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances," and (2) "[s]uch failure was a proximate cause of the injury."  A.R.S. § 12-563; *see also Baker*, 231 Ariz. at 384 ¶ 12 ("In medical malpractice cases, plaintiffs must show that a health care provider breached the appropriate standard of care and the breach resulted in injury."). Unless malpractice is grossly apparent, the standard of care must be established by expert medical testimony.  *Seisinger v. Siebel*, 220 Ariz. 85, 94 ¶ 33 (2009); *Hunter v. Benchimol*, 123 Ariz. 516, 517 (1979).

¶13        The dispute here involves the relationship between §§ 12-2603 and -2604.  Section 12-2603 was enacted in 2004 and sets forth the requirements for preliminary expert affidavits.  Section 12-2604 was enacted the following year and sets forth the requisite expert qualifications to testify on standard of care.

¶14        When an expert is deemed necessary under § 12-2603(A), the plaintiff must file with her initial disclosure statement a preliminary expert opinion affidavit setting forth, among other things, the "expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim."  § 12-2603(B)(1); *see also* Ariz. R. Civ. P. 26.1(d)(1) (requiring initial disclosure statements to be served on opposing party within forty days of last responsive pleading).  Section 12-2603(F) provides that the court "shall dismiss the claim . . . without prejudice" if the affidavit is not filed and served as required.  Subsection F further provides that "[u]pon any allegation of insufficiency of the affidavit, the court shall allow any party a reasonable time to cure any affidavit, if necessary."  § 12-2603(F).  There is no specified time by which a defendant must challenge a preliminary affidavit under § 12-2603.

¶15        Section 12-2604 states the requisite qualifications for standard-of-care experts, three of which are pertinent here.  First, "[i]f the party against whom or on whose behalf the testimony is offered is or claims to be a specialist," the expert must specialize "at the time of the occurrence

. . . in the same specialty." § 12-2604(A)(1). Second, if the defendant "is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty." *Id.* Third, "[d]uring the year immediately preceding the occurrence giving rise to the lawsuit," the expert must have "devoted a majority of the person's professional time to either or both . . . : (a) [t]he active clinical practice of the same health profession as the defendant and . . . in the same specialty or claimed specialty"; or (b) the instruction of students in the same healthcare profession or specialty. § 12-2604(A)(2)(a)–(b).

¶16　　　Rasor argues that before NWMC could file its motion for summary judgment challenging Ho's qualifications, it was first required to challenge the preliminary expert affidavit pursuant to § 12-2603(F). Rasor asserts that by failing to follow this procedure, NWMC effectively waived its opportunity to challenge Ho's qualifications. NWMC's failure to do so, in combination with filing a motion for summary judgment after the expert disclosure deadline expired, effectively deprived her an opportunity to obtain a qualifying expert.

¶17　　　The court of appeals has reached different conclusions regarding whether challenging an expert's affidavit under § 12-2603 is a prerequisite to challenging an expert's qualifications under § 12-2604. As did the appeals court here, the court in *Preston* ruled that when an expert affidavit was timely produced and unchallenged, but the expert's qualifications were challenged only later in a summary judgment motion, "the trial court should have allowed Plaintiffs additional time to substitute another standard of care expert." 238 Ariz. at 131 ¶ 19; *see also Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 323–24 ¶¶ 20–24 (App. 2008) (holding that § 12-2603 provides exclusive remedy for testing insufficiency of expert affidavit).

¶18　　　By contrast, in *St. George v. Plimpton*, 241 Ariz. 163 (App. 2016), the court affirmed summary judgment dismissing a medical malpractice claim for failure to establish expert qualifications. The court held that once the motion for summary judgment was filed, to procure additional time to find an alternative, the plaintiff would have to file an affidavit pursuant to Arizona Rule of Civil Procedure 56(d) (formerly Rule 56(f)), which prescribes the procedure for seeking additional evidence to combat a summary judgment motion. *St. George*, 241 Ariz. at 168 ¶ 30.

Because plaintiff did not file a Rule 56(d) affidavit and request for relief, the court held that the trial court did not err in denying extra time. *Id.* at ¶ 32, 169 ¶ 37; *see also Awsienko v. Cohen*, 227 Ariz. 256, 261 ¶ 22 n. 5 (App. 2011) (affirming summary judgment based on deficient expert qualifications when no challenge pursuant to § 12-2603(F) was made to expert affidavit).

**¶19**       We conclude that challenging an expert's affidavit under § 12-2603 is not a prerequisite for filing a summary judgment motion for lack of requisite expert qualifications under § 12-2604.  Rather, as the court of appeals held in *St. George*, the proper recourse for a plaintiff whose expert's qualifications are challenged for the first time in a summary judgment motion is to seek relief under Rule 56(d).

**¶20**       Our primary goal in interpreting statutes is to effectuate the legislature's intent.  *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561 ¶ 10 (2017).  "If the statute is subject to only one reasonable interpretation, we apply it without further analysis."  *Id.* (quoting *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015)).   "Words in statutes should be read in context in determining their meaning."  *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).  Where the meaning is unclear from language and context, we may employ secondary tools, such as considering legislative history, effects and consequences, and spirit and purpose.  *Baker,* 231 Ariz. at 383 ¶ 8.

**¶21**       By their terms, §§ 12-2603 and -2604 do not require that a defendant challenge a preliminary expert affidavit as a precondition for moving for summary judgment based on a plaintiff's inability to support the claim with requisite expert testimony.  Nor do they state that the "cure" provision of § 12-2603(F) applies other than in the context of a challenge to the preliminary expert affidavit.

**¶22**       Section 12-2603 pertains exclusively to preliminary expert witness affidavits, which only plaintiffs must provide.  The substantive requirements of § 12-2603(B) refer three times to the affidavits as "preliminary," indicating that this is a threshold procedural requirement for a plaintiff.  Likewise, the remedies set forth in § 12-2603(F) apply specifically to preliminary expert affidavits, providing that upon the court's or defendant's motion, the court shall dismiss an action without prejudice for failure to file a preliminary affidavit when required; and that where the preliminary affidavit is insufficient, the court shall allow a party reasonable

time to cure it. The statute thus requires a preliminary showing that the plaintiff can provide the expert testimony necessary to support the claim. If the plaintiff fails to do so, the court may dismiss the case without prejudice, thus leading to prompt resolution of meritless cases without unnecessarily wasting time or resources.

¶23 By contrast, the later-enacted § 12-2604 sets requirements for all expert standard-of-care witnesses on both sides in medical malpractice cases. Section 12-2604 gives substance to the proof requirements of § 12-563, without which a malpractice claim cannot succeed. Preliminary expert affidavits must be served on defense counsel shortly after the complaint is filed. *See supra* ¶ 14. Thus, even after the preliminary affidavit is served, it might not be clear to defense counsel until depositions or other discovery that an expert is unqualified or that her testimony will be insufficient to sustain the claim. Moreover, the preliminary affidavit expert may be different than the testifying expert. It does not make sense, therefore, to construe a defendant's failure to challenge an expert affidavit under § 12-2603 as categorically waiving the opportunity to challenge an expert's qualifications under § 12-2604.

¶24 Although § 12-2604 was plainly intended to define the expert qualifications that must be evidenced by the affidavit in § 12-2603, it also was intended to establish minimum qualifications for trial as well. Reading §§ 12-2603, -2604, and -563 together indicates that the first provision establishes a threshold procedural requirement, and the second establishes overall prerequisite qualifications, to satisfy the necessary elements of proof required by the third provision. By contrast, allowing the § 12-2603(F) automatic substitution-of-expert provision to carry beyond the preliminary and discovery phases would protract the litigation, thus defeating the overall purposes of § 12-2603.

¶25 Confining § 12-2603(F)'s "cure" provision to preliminary expert affidavits does not necessarily deprive a plaintiff of the opportunity to produce a substitute expert. When a defendant moves for summary judgment based on a plaintiff's failure to produce an expert meeting the § 12-2604 qualifications, the plaintiff may file a Rule 56(d) affidavit and corresponding motion for relief. *See St. George*, 241 Ariz. at 168 ¶ 30. Rule 56(d) applies when a party opposing summary judgment "cannot present evidence essential to justify its opposition." The opposing party may

request relief and an expedited hearing based on an affidavit "establishing specific and adequate grounds" and addressing, *inter alia*, the evidence beyond the party's control, what the party expects it to reveal, and an estimate of the time needed to obtain it. Ariz. R. Civ. P. 56(d)(1). After holding a hearing, the judge may defer considering the summary judgment motion and allow time to obtain the evidence, deny the requested relief, or issue any other appropriate order. Ariz. R. Civ. P. 56(d)(5). The court may consider both the good faith or lack thereof of the plaintiff in proposing the initial expert whose qualifications are questioned on summary judgment, as well as the defendant's waiting to challenge the proposed expert until this later stage of litigation rather than under § 12-2603 if the qualifications were plainly inadequate in the affidavit. This process provides fairness to plaintiffs while serving the statutes' purposes of ensuring efficient litigation of potentially meritorious claims.

¶26 We therefore reverse the court of appeals' holding that the provisions of § 12-2603(F) apply to a motion for summary judgment and automatically entitle plaintiff to an opportunity to substitute a new expert. *Rasor*, 239 Ariz. at 552–53 ¶¶ 17–19, 557 ¶ 38. To the extent *Preston* and *Sanchez* contain similar holdings, we disapprove of them as well.

### B. Nurse Ho's expert qualifications

¶27 Although the trial court did not specify its grounds for granting summary judgment, the court of appeals ruled as a matter of law that Ho was unqualified to provide expert standard-of-care testimony. *Id.* at 550–52 ¶¶ 9–15. We agree. As this Court held in *Baker*, an expert must establish the same specialization as the health care provider under § 12-2604(A) "when the care or treatment at issue was within that specialty." 231 Ariz. at 384 ¶ 14. Thus, the trial court must initially determine whether the care or treatment involved a specialty or subspecialty. *Id.* at 386 ¶ 27. If it did, the testifying expert must share the same specialty. *Id.* If the health care provider is board certified, the expert must also be certified in that specialty. *Id.* Here, the trial court did not identify whether the treatment at issue involved a specialty.

¶28 The parties disagree over the extent of specialized expertise exercised by NWMC's ICU nurses who allegedly caused Rasor's injuries. NWMC argues, and Ho agreed in her deposition, that ICU nurses fall under

their own specialty. Rasor contends they are not specialists because they have no additional education or certificate beyond their licenses as registered nurses. The court of appeals noted that ICU nurses can obtain critical care certification, *Rasor*, 239 Ariz. at 551 ¶ 12 n.6, but found it unnecessary to resolve whether the care provided involved a medical specialization or whether Ho possessed that same specialization under § 12-2604(A)(1) "because Ho does not meet the criteria of § 12-2604(A)(2) or (3)." *Id.* at 551 ¶ 12.

¶**29**     We agree that Ho did not qualify as a standard-of-care expert regardless of whether the care at issue involved one specialty as opposed to another, or instead general practice. In addition to the symmetrical specialty requirements of § 12-2604(A)(1), the proposed expert must have spent "a majority of . . . professional time" in the year preceding the injury either in (a) the "active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty"; or (b) "[i]f the defendant is a general practitioner . . . in [a]ctive clinical practice as a general practitioner." § 12-2604(A)(2)(a), -2604(A)(3)(a); *see also* § 12-2604(A)(2)(b), -2604(A)(3)(b) (allowing expert qualification for a person providing comparable instruction of students).

¶**30**     Ho is a wound-care specialist. Apart from the requirements of § 12-2604(A)(1), and whether the care involved a medical specialty or was provided by a general practitioner, an expert must have devoted a majority of his or her professional time in the year preceding the injury to some combination of clinical treatment or student instruction. Ho does not meet these requirements, because, as she testified in her deposition, in the year preceding Ms. Rasor's surgery, she worked at a long-term acute care facility as a wound care coordinator while "pick[ing] up extra shifts as a house supervisor or in the ICU" and did not work as an ICU nurse.

### C. Disposition

¶**31**     Ordinarily, in the absence of proceeding under Rule 56(d), a plaintiff's failure to provide a qualified standard-of-care expert would justify summary judgment for the defense. *See, e.g.*, *Seisinger*, 220 Ariz. at 94 ¶ 33. However, two factors here weigh against it. First, as we have noted, judicial opinions construing the relationship between §§ 12-2603 and

-2604 were conflicting, making justifiable the court of appeals' remand to the trial court to allow plaintiff to find a different expert, a request plaintiff made of the trial court at least twice. Second, the trial court repeatedly indicated that it would allow Rasor to use Ho as a standard-of-care witness ("You can take that to the bank, okay?"). Because the trial court did not explain the basis for granting summary judgment in favor of NWMC, we cannot know whether the court changed its mind and found that Ho could not serve as a standard-of-care witness.

**¶32** However, the trial court also repeatedly expressed doubts as to whether Ho was qualified to provide expert testimony on causation. Proof is required on both issues. A.R.S. § 12-563; *see also Baker*, 231 Ariz. at 384 ¶ 12. Because it concluded that Ho was not qualified as a standard-of-care expert, the court of appeals did not decide (1) whether Ho was qualified as a causation expert; (2) whether, as Rasor argued, expert causation testimony is legally unnecessary as causation would be readily apparent to the jury on the facts; or (3) whether Ho was qualified as an expert under Arizona Rule of Evidence 702 (expert must be qualified by "knowledge, skill, experience, training, or education"). These issues are not before us. Because it would not matter whether Ho is qualified as a standard-of-care expert if expert causation evidence is needed and Ho is unqualified as a matter of law to provide it, we remand the case to the court of appeals to address these issues in the first instance.

**¶33** If the court of appeals determines that expert testimony on causation is required and Ho is not qualified to provide it, it should affirm the trial court's grant of summary judgment to NWMC. If it decides otherwise, it should remand to the trial court to provide Rasor an opportunity to file a Rule 56(d) motion and for any other appropriate proceedings.

### III. CONCLUSION

**¶34** We vacate paragraphs 17–19 and 38 of the court of appeals' opinion and remand the case to that court for further proceedings consistent with this opinion.