NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JUDY KOCH-GULOTTY, *Plaintiff/Appellant*,

*v.*

THERESE A. PASCUZZI, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0483
FILED 6-21-2018

Appeal from the Superior Court in Maricopa County
No. CV 2013-011163
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Stephen Gorey Attorney at Law, Indialantic, FL
By Stephen Gorey
*Co-Counsel for Plaintiff/Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Robert R. Berk, Jennifer B. Anderson
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jon W. Thompson joined.

---

**B R O W N**, Judge:

¶1 Judy Koch-Gulotty appeals the superior court's partial grant of summary judgment, denial of her requested jury instruction on spoliation, denial of her motion for new trial, and jury verdict.[1] For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 Judy injured her left shoulder while working as a waitress at Marie Callender's in December 2010. As a result, she received temporary workers' compensation benefits for several months until the insurance carrier terminated further medical care based upon an independent medical exam indicating her condition was stationary.

¶3 Soon thereafter, Judy retained attorney Therese Pascuzzi, a certified specialist in workers' compensation law with the law firm of Taylor & Associates, to represent her in proceedings before the Industrial Commission of Arizona ("ICA"). During their first meeting, Pascuzzi asked Judy about her medical history and specifically whether she had any previous issues with her left shoulder, which Judy denied. Pascuzzi then requested a hearing to appeal whether Judy's medical care and benefits had

---

[1] For ease of reference, we refer to appellant by her first name throughout the remainder of our decision.

been prematurely terminated, and the hearing was scheduled for August 5, 2011.[2]

**¶4**      At Judy's deposition the following month, the insurance carrier's attorney, Kirk Barberich, asked Judy whether she had "[a]ny left shoulder accidents or injuries or problems in the past" and she answered "[n]o, not that I can remember." At the end of the deposition, Pascuzzi waived Judy's ability to read and make changes to the deposition. Judy then asked Pascuzzi what the waiver meant and whether it should have been Judy's decision. Pascuzzi explained waiver to Judy and offered her the opportunity to change the position on waiver, but Judy declined.

**¶5**      In mid-July, Barberich informed Pascuzzi that he had requested Judy's medical records and discovered she had prior issues with her left shoulder. Pascuzzi informed Judy of Barberich's discovery and explained how her lack of candor during the deposition could negatively impact her workers' compensation claim. After discussing the possibility of settlement, Judy authorized Pascuzzi to settle the case for a lump sum but retaining the possibility of reopening the workers' compensation claim. Pascuzzi's proposal along those lines to Barberich was immediately rejected.

**¶6**      When Pascuzzi received Judy's medical records from Barberich, Pascuzzi realized the extent of Judy's prior left shoulder issues. The records showed Judy injured her left shoulder while living in Michigan in August 2008. At one point, Judy rated her pain as seven or eight out of ten, with ten being extreme pain. She received a cortisone shot and used a medical device on her shoulder which wrapped around her body. Judy discussed her shoulder problems with her primary care physician through May 2010, seven months before her injury occurred at Marie Callender's.

**¶7**      Around that time, Pascuzzi also discovered that Judy previously filed four workers' compensation claims, two motor vehicle accident claims, and one sexual harassment claim. Pascuzzi was concerned Judy's litigation history would adversely affect her credibility. In addition, Judy told Pascuzzi that she believed Dr. Scalise committed medical malpractice when he operated on her shoulder and she wanted to sue him. Pascuzzi advised her not to do anything related to a medical malpractice

---

[2]      In May 2011, Dr. Scalise performed a diagnostic surgery on Judy's left shoulder to discover why Judy was in pain. Judy did not inform Dr. Scalise of any prior left shoulder injuries.

lawsuit until the workers' compensation case was resolved because Judy needed Dr. Scalise to testify favorably at the hearing.

¶8            Pascuzzi was also concerned whether the prior medical history showing left shoulder issues would change Dr. Scalise's causation opinion.   She then gave Judy two options: (1) Judy could request an appointment with Dr. Scalise, which would have a quick turnaround time, and ask whether his opinion changed given her prior medical history, or (2) they could set up a medical-legal conference to discuss the issue, which would take longer and cost several hundred dollars.  Judy chose the first option.

¶9            Judy's effort to schedule an appointment prompted a phone call from Dr. Scalise's office to Pascuzzi.  According to office staff, Judy went to the office and demanded to see Dr. Scalise to talk about the unnecessary surgery he had performed.  Pascuzzi told office staff Judy was merely there to make a follow-up appointment, but staff informed Pascuzzi that Judy wanted "to talk to him about her legal claims" and the doctor would not see her for that purpose.

¶10            On July 26, Pascuzzi called Judy to discuss settling the case. Pascuzzi explained it would be in Judy's interest to settle because of Judy's lack of credibility and litigiousness, and because of the uncertainty of Dr. Scalise's testimony given Judy's conduct.  Judy then authorized Pascuzzi to settle.

¶11            On August 3, after various settlement discussions, Judy authorized Pascuzzi to settle her workers' compensation claim for $30,000. Pascuzzi verbally confirmed the settlement agreement with Barberich and notified the ICA that the upcoming hearing could be canceled.  Later that day, however, Judy spoke with her husband and decided she no longer wished to settle.  The next day, Judy and her husband discussed the settlement with Pascuzzi by phone, and Pascuzzi reminded Judy she was already bound by the settlement.

¶12            At Judy's request, she met with Richard Taylor, an attorney with Taylor & Associates, and Pascuzzi on August 5.  Taylor and Pascuzzi told Judy the settlement was a good deal.  Judy expressed her desire to back out of the verbal agreement, if possible, and have an administrative law judge determine her claim.  Pascuzzi told Judy that if Judy were to renege on the agreement, Pascuzzi would not be able to represent her because Barberich would have Pascuzzi testify against Judy.

4

¶13        Pascuzzi suggested Judy set up a medical-legal conference with Dr. Scalise before she reneged to determine whether he would testify on her behalf and if the claim had a probability of success. Pascuzzi scheduled the medical-legal conference with Dr. Scalise for late August, but he cancelled the appointment and rescheduled it to September. On August 17, Judy decided she would not try to back out of the agreement.

¶14        On August 23 Judy signed the agreement, which stated that Judy could not reopen the claim. Judy also signed a "waiver" indicating she would not appeal from the agreement. Pascuzzi was not with Judy when she signed the two documents but explained the terms to her before that day. On August 25, the ICA approved the settlement agreement.

¶15        Judy eventually sued Pascuzzi, Taylor, and Taylor & Associates (collectively, "Defendants"), alleging legal malpractice and breach of fiduciary duty. Defendants eventually moved for partial summary judgment on Judy's claim that (1) they coerced her into signing the settlement agreement and (2) she did not understand the meaning or effect of the agreement. After briefing and oral argument, the court granted the first part of the motion, noting that "[t]here is absolutely no evidence in the record [that] supports [Judy's] allegation that she was coerced into settling her case." But the court denied the motion as to Judy's claim that defendants misled her and she did not understand the terms of the agreement.

¶16        The court also granted Defendants' motion to bifurcate the trial. The first stage of trial would cover the standard of care and causation. The second phase, if necessary, would cover damages. After a five-day jury trial on the first phase, the jury found Pascuzzi complied with the applicable standard of care and therefore did not reach causation.

¶17        Judy then moved for a new trial pursuant to Arizona Rule of Civil Procedure 59(a)(1)(F), (H), asserting the verdict was not supported by evidence or was contrary to law, and the superior court erred by failing to admit evidence and precluding argument regarding spoliation. The court denied Judy's motion and this timely appeal followed.

**DISCUSSION**

A.        **Partial Summary Judgment**

¶18        Judy argues the superior court erred in granting Pascuzzi's motion for partial summary judgment relating to "her claim that she was pressured and coerced into entering into the settlement agreement." She

contends the court impermissibly weighed her testimony and that the jury should have decided the issue. Defendants counter that Judy's arguments are "belied by her own sworn verification" that no coercion occurred and by her failure to present any evidence of coercion in opposing the motion.

**¶19**        "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Ariz. R. Civ. P. 56(a). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* We review the grant of summary judgment de novo, "and view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the [non-moving party]." *St. George v. Plimpton*, 241 Ariz. 163, 165, ¶ 11 (App. 2016). We will affirm the court's ruling if it is correct for any reason. *Mutschler v. City of Phoenix*, 212 Ariz. 160, 162, ¶ 8 (App. 2006).

**¶20**        To prevail on a legal malpractice claim, the plaintiff must prove "duty, breach of duty, causation, and damages." *Phillips v. Clancy*, 152 Ariz. 415, 418 (App. 1986). Thus, Judy had the burden of establishing "the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession," a "breach of that duty," "that such negligence was a proximate cause of resulting injury," and damages. *Id.*

**¶21**        In requesting partial summary judgment, Defendants argued that Judy "came up with a series of new allegations," including that she was coerced into accepting the $30,000 offer. Relying on Restatement (Second) of Contracts ("Restatement") § 175 (1981), Defendants asserted that "Arizona law defines coercion as an improper threat by the other party that leaves the victim no reasonable alternative but to assent to a contract."[3] Based upon that authority, Defendants argued Judy had not identified any improper threat and that her deposition testimony showed she considered other alternatives and even consulted with other attorneys. Defendants

---

[3]        Although it is unclear when and how Judy asserted a coercion claim, or theory, it can arguably be derived from her deposition testimony. And while Defendants did not explain how coercion constitutes a "claim" or even "part of a claim" of either legal malpractice or breach of fiduciary duty, Judy did not object to the motion on procedural grounds. Thus, on this record, we presume that the matter was appropriate for disposition by summary judgment, and that the only cited authority (Restatement) regarding the definition of coercion, controls.

also argued that Judy's coercion claim was "legally irreconcilable" with the statements she agreed to as part of the ICA settlement process. The final page of the settlement agreement states as follows:

> I, JUDY KOCH-GULOTTY, have read the terms of the attached Petition For Approval Of Compromise And Settlement Agreement and understand the terms of the agreement and believe that they are in my best interests. No coercion, duress, fraud, misrepresentation or undisclosed additional agreements have been used to achieve this settlement.

The agreement also states that "[t]he parties agree and avow . . . that no coercion, duress, fraud, misrepresentation or undisclosed additional agreements have been used to achieve this agreement." Additionally, Judy signed the following waiver, under oath:

> I, JUDY KOCH-GULOTTY, Applicant, have read and considered the terms of the AWARD issued by Hon. J. Matthew Powell on <u>August 25, 2011</u>, and consider them to be accurate and reasonable. Therefore, I do not wish to protest the terms of same and I hereby waive any present right to appeal this matter to the Court of Appeals.

Given these specific admissions, Defendants argued that Judy's coercion claim should be rejected as a matter of law.

¶22 Judy's response to Defendants' motion included two paragraphs addressing "pressure and coercion." Judy did not contest Defendants' reliance on the Restatement nor did she assert that she had provided, or could provide, any evidence of coercion. Instead, she argued she was not required to meet the "narrow definition of coercion," pointing to facts indicating she was intensely pressured and impliedly threatened to settle. At oral argument on the motion, Judy's counsel spent little time on the coercion issue, did not identify any specific evidence showing coercion, and left the matter in the court's hands, stating that "I [will] let you decide the question of the narrow issue of coercion." The court then decided the issue in favor of Defendants, presumably based upon the seemingly narrow grounds that Judy's coercion theory contradicted her sworn testimony and her affirmative statements in the settlement documents, the validity of which were confirmed under oath.

¶23 Based upon the record as outlined above, we reject Judy's suggestion on appeal that the motion for summary judgment had anything

to do with whether Defendants "pressured" her into settling. Defendants did not reference "pressure" in their motion nor did the court give any indication that it was ruling, as a matter of law, that Judy would be prevented from presenting evidence at trial that she felt pressured to settle. And Judy points to nothing in the record showing that she in fact was unable to present such evidence at trial. Thus, the issue before us on appeal is whether the superior court properly found that Judy could not proceed to trial on her *coercion* claim.

¶24 Judy failed to show evidence creating a genuine issue of material fact relating to coercion. At her deposition, when asked whether she had to sign the settlement agreement on the day she signed it, she responded "I don't believe I had to, but I did." She also testified that she consulted with other workers' compensation attorneys between the time she initially agreed to settle and the time she signed the settlement agreement.

¶25 Moreover, Judy's coercion claim flies in the face of the specific acknowledgments she made when executing the settlement documents. Arguably, she presented a scintilla of evidence when she testified at her deposition testimony that no "duress, fraud, coercion, misrepresentation, or undisclosed additional agreements have been used to achieve settlement" on the day she signed it, but there "was definitely all of the above" prior to that day. But a scintilla of evidence is insufficient to overcome summary judgment. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990) ("[A]ffidavits that . . . tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence[,] may provide a 'scintilla' or create the 'slightest doubt' and still be insufficient to withstand a motion for summary judgment."); *see also State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 26 (App. 1986) ("Conclusory statements are simply insufficient to raise any genuine issues of material fact . . . .").

¶26 The superior court did not err in granting partial summary judgment because reasonable people could not agree with Judy's generalized assertions that Defendants coerced her into settling her claim. *Orme Sch.*, 166 Ariz. at 309.[4]

---

[4] Judy also argues that summary judgment was improper because Pascuzzi threatened to withdraw on the eve of the hearing unless Judy settled. We do not consider that argument because it was not addressed in Judy's response to Defendants' motion for partial summary judgment. *See*

### B. Motion for New Trial

**¶27** Judy next argues the superior court abused its discretion when it denied her motion for new trial because the jury's verdict was contrary to law in that Pascuzzi breached the standard of care by failing to consult with Dr. Scalise before the scheduled hearing.[5]

**¶28** We review the superior court's ruling on a motion for new trial for an abuse of discretion. *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 36, ¶ 15 (App. 2001). When "reviewing a jury verdict, we view the evidence in a light most favorable to sustaining the verdict," and will affirm the judgment "if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict." *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996).

**¶29** Judy's argument, taken at face value, is flawed. The elements of negligence, other than the existence of a duty, which is a question of law, are factual issues "generally within the province of the jury." *Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11 (App. 2009); *see also Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 10 (2007) ("Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case."). Moreover, we are not persuaded that the secondary authorities cited within Judy's briefs establish the standard of care and the breach thereof. *See Baird v. Pace*, 156 Ariz. 418, 420 (App. 1987) ("Expert testimony is generally used to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard.").

**¶30** At trial, both parties called experts to testify about the standard of care. Pascuzzi's expert, attorney Robert Wisniewski, who is

---

*Giovanelli v. First Fed. Sav. & Loan Ass'n of Phoenix*, 120 Ariz. 577, 581 (App. 1978) ("[I]ssues cannot be raised on appeal from the granting of summary judgment which were not raised by appellants in their affidavits, depositions or pleadings . . . .").

[5] Judy moved for a new trial, asserting the verdict was not supported by the evidence and was contrary to law. On appeal, Judy raises only the latter assertion. Thus, any argument that the verdict is unsupported by the evidence is abandoned. *See DeElena v. S. Pac. Co.*, 121 Ariz. 563, 572 (1979) ("Since appellant does not consider these issues as worthy of argument, we consider them as abandoned.").

board certified in workers' compensation law, opined that the standard of care does not require a workers' compensation claimant's attorney in every case to personally meet with a treating physician. Pascuzzi also testified that having a client schedule an appointment with the doctor to ask for a causation opinion happens "all the time." Moreover, the evidence showed that Judy's demand to meet with Dr. Scalise to discuss her potential medical malpractice claim against him impacted Defendants' ability to receive a causation opinion. In contrast, Judy's expert, Mark Harrison, an attorney with a wealth of experience in many areas but none in worker's compensation law, opined that Pascuzzi sending Judy to get Dr. Scalise's opinion fell below the standard of care. Resolution of these competing opinions was a matter to be determined by the jury. *See Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 607 (App. 1980) ("It is the function of the jury to weigh conflicting evidence and inferences and to determine the credibility of witnesses.").

**¶31** Because substantial evidence supports the jury's verdict that Pascuzzi complied with the standard of care, the superior court acted within its discretion in denying Judy's motion for a new trial.

### C. Instruction on Spoliation of Evidence

**¶32** Judy next contends the superior court erred by not instructing the jury that it could make an adverse inference against defendants based upon Defendants' destruction of evidence.

**¶33** After the settlement was finalized, the law firm purged Judy's file of certain documents in accordance with the firm's practice of moving non-active files to storage and shredding non-critical documents. Pascuzzi was not involved in removing or destroying the documents.

**¶34** Before trial, both parties filed motions in limine concerning the potential spoliation of documents. Judy's motion requested the court "make a pretrial determination that Defendants . . . committed acts of spoliation by failing to preserve relevant evidence," which would put "Defendants on notice" and "entitle [her] to request a spoliation instruction." Judy asserted in relevant part that Pascuzzi spoliated evidence by purging Judy's file of documents, including Pascuzzi's handwritten notes from the initial client meeting, her notes from the deposition, and an alleged sticky note memorializing Judy's refusal to authorize a consultation fee to pay Dr. Scalise. Pascuzzi's motion sought to prevent Judy from offering evidence of or arguing spoliation.

¶35 The superior court ordered the parties to not "address spoliation arguments in their opening statements," and would "make a decision on whether the spoliation theory can go forward before [Judy's] expert testifies." Later, the court decided it would not give Judy's requested spoliation instruction.

¶36 Litigants have a duty to preserve relevant evidence. *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250 (App. 1997). A court may impose sanctions for the destruction of evidence, such as giving the jury an adverse inference instruction. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 260, ¶ 51 (App. 2013). There is no rigid rule mandating when or what sanctions should be imposed because of the destruction of evidence. *Smyser v. City of Peoria*, 215 Ariz. 428, 439, ¶ 36 (App. 2007). Rather, courts must decide sanctions "on a case-by-case basis, considering all relevant factors," *Souza*, 191 Ariz. at 250, such as whether the evidence was destroyed intentionally or in bad faith and whether the loss of evidence prejudiced the party seeking sanctions, *Smyser*, 215 Ariz. at 439-40, ¶¶ 35-38. The superior court "has substantial discretion in determining how to instruct the jury," *id.* at 439, ¶ 33, and we will not reverse the court's denial of a jury instruction absent an abuse of discretion, *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 612, ¶ 32 (App. 2014).

¶37 Judy asserts a spoliation instruction was proper because the law firm destroyed Pascuzzi's handwritten notes from the initial client meeting and Judy's deposition, and the alleged sticky note. Judy contends there was spoliation because "[i]n light of the discord and acrimony that arose between Judy and Attorney Pascuzzi concerning the oral settlement agreement, any reasonable lawyer would have anticipated either a bar complaint or a legal-malpractice case." We need not address whether destruction of these documents was intentional or in bad faith because Judy was not prejudiced by the missing evidence.

¶38 The destruction of Pascuzzi's handwritten notes from the initial client meeting was not prejudicial. Judy asserts the notes would have helped "reveal the content, thoroughness, and professionalism of the interview" and would have refuted Pascuzzi's claim that Judy was not as forthcoming as she should have been when communicating with Pascuzzi. These notes, however, were not relevant to a material dispute. At trial, both parties agreed that Judy discussed her prior medical history but did not disclose her prior left shoulder problems. Moreover, the court permitted Judy's counsel to cross-examine Pascuzzi about the destruction of the handwritten notes from the intake interview.

¶39          Similarly, the destruction of Pascuzzi's handwritten notes from Judy's deposition did not prejudice Judy. She contends the notes were relevant because they would prove that "Pascuzzi had supposedly observed and noted an odd response by Judy at her deposition." At trial, Pascuzzi readily admitted she found that one of Judy's answers to a question was odd.

¶40          The destruction of an alleged sticky note memorializing Judy's refusal to pay for a medical-legal consultation likewise was not prejudicial. Judy argues this evidence was relevant to rebut Pascuzzi's claim that Judy refused to pay for the medical-legal consultation. As the superior court noted, there was no clear evidence that the note even existed. There was testimony that Pascuzzi's general practice was to place a sticky note on the client's folder when the client refused to authorize expenditures, but she could not recall whether it was done in this case. There was undisputed testimony that Judy decided to schedule a follow-up appointment with Dr. Scalise rather than expressly authorize or refuse to make expenditures associated with a medical-legal conference. Thus, it is questionable whether the sticky note existed. Even if it did, the note would be harmful to Judy, as it would show she refused to authorize the expenditure for a medical-legal conference. In addition, the court permitted Judy's counsel to cross-examine Pascuzzi about the destruction of the sticky note at trial.

¶41          The destruction of these three, or perhaps only two, documents did not cause prejudice to Judy. Accordingly, the superior court did not abuse its discretion when it denied Judy's proposed spoliation instruction.

### D.     Failure to Order Deposition Transcript

¶42          Judy argues Pascuzzi, as a matter of law, violated the standard of care by failing to obtain a copy of Judy's deposition and have needed changes made to it. Pascuzzi counters that Judy waived this argument because Judy's motion for new trial did not "challenge the sufficiency of the evidence to support the verdict."

¶43          Judy couches this claim as a legal issue, arguing Pascuzzi violated the standard of care "as a matter of law." This issue, however, is factual. *See Gipson*, 214 Ariz. at 143, ¶ 10 ("Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case."). In essence, Judy asks us to reweigh the evidence and decide whether the

evidence supports a finding that Pascuzzi complied with the applicable standard of care when she waived the right to order a copy of Judy's deposition that would provide Judy the ability to make changes to it.

**¶44** "On an appeal from a final judgment," we do "not consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury unless a motion for a new trial was made." Ariz. Rev. Stat. § 12-2102(C); *see also Acuna v. Kroack*, 212 Ariz. 104, 111 n.9, ¶ 27 (App. 2006) ("'[A] motion for new trial must be made before the scope of the appeal may be enlarged to include the sufficiency of the evidence to sustain the verdict or judgment,' and '[t]hat scope may not be enlarged . . . beyond the matters assigned as error in the motion for new trial.'" (quoting *Gabriel v. Murphy*, 4 Ariz. App. 440, 442 (1966))). Judy's motion for new trial did not raise this issue; therefore, we do not address it.

## CONCLUSION

**¶45** We affirm the judgment of the superior court.



AMY M. WOOD • Clerk of the Court
FILED: AA